## THOMAS *v.* TAGGART.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 197.  Argued January 17, 20, 1908.—Decided April 6, 1908.

*Richardson* v. *Shaw, ante,* p. 365, followed to the effect that as a general rule
the broker is the pledgee and the customer the owner and pledgor of stocks
carried on margin.

Where there is a repugnancy between the printed and written provisions
of a contract, the writing is presumed to express the specific intention
of the parties and will prevail.  In this case the written portion on the
receipt given for stocks, deposited with the broker as collateral on account,
was held as specially applicable thereto and that the broker's right to
rehypothecate stocks under the printed portion of the contract was
confined to the stocks purchased and carried on margin.

If title to property is good as against the bankrupt or his creditors at the
time the trustee's title accrues, title does not pass, and the owner of the
property is entitled to have it restored to him, or, if it has been sold, the
proceeds thereof.

Shares of stock held by a broker as collateral for the account of a customer,
upon which the latter is not indebted to the broker, are the property of

the customer, and, as the trustee has no better right thereto than the bankrupt, the customer is entitled to their possession; and this right is not affected by the fact that the broker had hypothecated the shares. In such case the customer is entitled to the shares, or their proceeds, when returned to the trustee if the loan has been paid by proceeds of other securities pledged therefor.

Proof of claim of a customer against a broker, including value of securities deposited as collateral, does not amount to a waiver of his right to recover possession of the specific stocks, if found, where his claim specifically states that he does not waive such right of possession.

149 Fed. Rep. 176, affirmed.

THE facts are stated in the opinion.

*Mr. Abram I. Elkus*, with whom *Mr. Carlisle J. Gleason* was on the brief, for petitioners.

*Mr. Graham Sumner* and *Mr. George E. Hall*, with whom *Mr. Thomas Thacher, Mr. Edwin M. Lawrence*, and *Mr. Hugo S. Mack* were on the briefs, for respondents.[1]

MR. JUSTICE DAY delivered the opinion of the court.

This case was argued and submitted with *Henry Richardson, as Trustee in Bankruptcy*, v. *John M. Shaw and Alexander Davidson*, No. 122, just decided, *ante* p. 365. To the extent which the case involves the same general questions as to the legal relations of stockbrokers and customers, we need not repeat the discussion had in *Richardson* v. *Shaw*, by which the conclusion was reached that under the usual contract for a speculative purchase of stock the customer is considered the pledgor and the broker the pledgee.

In this case it is necessary to notice certain specific features not arising in the case just referred to. The petitioners, Edward S. Thomas, Lloyd M. Howell and Ashbel P. Fitch, are the trustees in bankruptcy of Jacob Berry and Harold L. Bennett, individually and as partners as Berry & Company. Several persons, among others Anna D. Taggart, Harris Filson, William C. Bowers and George E. Hall, made claims to re-

---

[1] Argued simultaneously with No. 122, *Richardson* v. *Shaw, ante*, p. 365.

cover certain certificates of stock, as against the trustees in bankruptcy, or to have a lien on the funds, the proceeds of other stocks in the hands of the trustees. The claims were referred to a referee in bankruptcy, and, upon hearing, he found in favor of certain of the claimants, among others Mrs. Taggart, Filson, Hall and Bowers. The report of the referee was confirmed by the District Judge on October 4, 1905, and the trustees were directed to turn over certain certificates of stock and proceeds of other certificates to the claimants. Upon appeal the order and judgment of the District Court was affirmed by the Circuit Court of Appeals for the Second Circuit, *sub nomine In re Berry*, 149 Fed. Rep. 176, and the case is now here upon a writ of certiorari.

From the findings of the referee it appears that certificates of stock were pledged with the Hanover National Bank by Berry & Company the day before the failure. This pledge was to secure a demand loan of $45,000. Subsequently the bank returned to the trustees all funds and stocks over and above its loans. It returned in cash $6,310.41 and certain shares of stock.

Taking up the several claims, we will first notice that of Anna D. Taggart. She claims two certificates for 83 shares of United States Steel stock preferred, which were returned by the Hanover Bank unsold to the trustees in bankruptcy. The receipt given to Mrs. Taggart at the time of the deposit is in the words following:

"SEP. 14, 1904.

"Received from Anna D. Taggart 83 shs. U. S. Steel pfd. No. A30563–c15546. The same to be a general deposit and this receipt is given and received with mutual understanding that Jacob Berry & Co. may hold the same as margin and as a security for or apply the deposit in part payment of or account of losses or any other transactions in the purchase or sale of stocks, bonds, securities or commodities made by them for your account.

"This receipt is given and received upon the further under-

standing and agreement in consideration of Jacob Berry & Co. executing such orders for the purchase or sale of stocks, bonds, securities or commodities as may be given to them in writing, orally, by telegraph or telephone; that the said Jacob Berry & Co. may repledge, rehypothecate or loan any or all of said stocks, bonds, securities or commodities held by them on account thereof as margin or otherwise, may substitute similar stocks, bonds, securities or commodities therefor, and that said Jacob Berry & Co. may, without notice upon the approximate exhaustion of margin sell, or buy, as the case may be, any stocks, bonds, securities or commodities bought and sold or held by them as collateral, or margin, or otherwise, and that in case of contracts for future delivery that said Jacob Berry & Co. may close the same by purchase or sale as the case may be, without notice, provided however, that such purchases or sales may be made upon the Consolidated Stock and Petroleum Exchange of New York, the New York Stock Exchange, the Chicago Board of Trade, or in any other exchange in the City of New York where such stocks, bonds, securities or other commodities are dealt in.

"No. A30563—33 Shs.

"No. c15546—50  "

"GEO. M. DAVIS, *Mgr.*"

Across the face of this receipt was written, in ink, the words "as collateral on account." The question is, Mrs. Taggart not being indebted to the trustees, but having a balance due from the estate to her, did these shares of stock belong to the trustee in bankruptcy as part of the bankrupt's estate, or were they the property of the claimant, Mrs. Taggart? The learned Court of Appeals construed the receipt as consisting of two parts—the first paragraph relating to the shares of steel stock especially deposited, and the second to the stocks, bonds and securities or commodities purchased upon her account by the brokers, concerning which they were given the right to repledge, rehypothecate or loan, and the right to substitute therefor similar stocks, bonds and securities.

In *Richardson* v. *Shaw, ante,* p. 365, we have discussed the legal relation existing between a customer and a broker who has the right to pledge and hypothecate securities purchased for the customer and substitute similar securities therefor, with the obligation to respond at all times to the demand of the customer for the redemption of the stocks, and we need not here repeat what is therein said.

We are of the opinion that the Circuit Court of Appeals correctly construed this receipt. It was the evident purpose of the parties that the eighty-three shares of United States Steel stock preferred was to be held, as the receipt shows, as security for losses in purchase or sale of stocks, bonds or securities on account of the customer, and the separate paragraph of the receipt, giving the right to repledge, etc., and substitute similar stocks, bonds and securities, had reference to the stock, securities, etc., obtained in executing the orders for purchase made by the customer. And this construction of the receipt is, we think, placed beyond contradiction when effect is given to the words written across the face of the printed receipt as "collateral on account." It is a well-settled rule of law that if there is a repugnancy between the printed and the written provisions of the contract, the writing will prevail. It is presumed to express the specific intention of the parties. *Hagan* v. *Scottish Insurance Co.,* 186 U. S. 423.

This being the situation as to Mrs. Taggart's claim, we think the court properly held that she was entitled to recover her shares of stock. They were not the property of Berry & Company, but were held as collateral to her account upon which she is not indebted to the brokers. The certificates were returned to the trustees, who had no better right in them than the bankrupt.

The rule is generally recognized that if the title to property claimed is good as against the bankrupt and his creditors at the time the trustee's title accrued, the title does not pass and the property should be restored to its true owner; or, if the property has been sold, the proceeds of the sale takes the place

of the property. Loveland on Bankruptcy (3d ed.), § 152; *Hewit* v. *Berlin Machine Works*, 194 U. S. 296; *York Manufacturing Co.* v. *Cassell*, 201 U. S. 344.

We will next consider the claim of Harris Filson.

Filson claims a lien on the fund as the owner of two certificates for ten shares each of preferred stock of the Atchison, Topeka and Santa Fé Railroad Company.

Filson identified the certificates by their numbers and produced Berry & Company's receipts therefor. The bankrupts, Berry & Company, had hypothecated them with the Hanover Bank, which sold them for $2,072.50, which the claimant seeks to recover.

The master finds that Filson had a speculative account with Berry & Company, and "was trading on both sides of the market." On the morning of November 25, his account showed that he had bought on margin, 70 shares of stock, including 40 shares of Pennsylvania Railroad, and that he had sold "short" 50 shares of stock, including 20 shares of "Atchison preferred," and 10 shares of "Erie, first preferred." The account also showed a cash credit of $3,105.97. The claimant testified that he called at the office of Berry & Company on November 25, to arrange to take out of the account the 40 shares of Pennsylvania, which he had previously bought on margin on November 17. He took with him one of the ten share certificates of Atchison, Topeka and Santa Fé, and asked the cashier to figure up the account and let him know if the deposit of the Atchison certificate would leave sufficient margin to withdraw the Pennsylvania stock. He was told that it was not sufficient, as the withdrawal of the Pennsylvania stock would leave a credit balance of only $300 or $400. Filson then went to his safe deposit box and took out two additional certificates for 10 shares of Atchison and 10 shares of Erie, and delivered them, together with other certificates, to Berry & Company on their usual receipt, which was, in form, the same as the receipt given to Mrs. Taggart, above quoted.

The next day Berry & Company failed, Filson never re-

ceived his Pennsylvania stock, and on November 26 no certificate of Pennsylvania stock came into the hands of the receiver in bankruptcy, nor was deposited in any bank as collateral.

Upon the principles stated, we are clearly of the opinion that Filson had a valid claim for the value of his shares of Atchison stock in controversy.

As to two shares of New York, New Haven and Hartford stock, claimed by William C. Bowers, the facts require no additional discussion. These shares were pledged and the same receipt given as above described. The shares were pledged to the Hanover Bank and returned unsold to the trustees. As Bowers was not indebted on the account for which they were held as security, the shares belonged to him.

George E. Hall seeks to recover a certificate for ten shares of common stock of the United States Steel Corporation, returned to the trustees by the Hanover Bank, unsold.

On November 1, 1904, Hall deposited certain securities, including the steel stock, with the New Haven manager of Berry & Company, and took a receipt, specifying that they were held "as collateral." Berry & Company hypothecated them with the Hanover Bank. Hall had a speculative account with Berry & Company at the time, and the securities were deposited in lieu of cash margin for the account. By a prior order in the bankruptcy proceeding the claimant has recovered from the trustees certain stocks found to be his property, but which had not been hypothecated with Berry & Company.

No lien or claim on the stock in question is asserted by the trustees, and Hall was not indebted to Berry & Company on November 25, 1904. Hall filed a claim in bankruptcy on December 19, 1904, for $1,850, which included the value of all his stocks in the hands of Berry & Company, valued at $1,600, and a cash balance of $250 due him. In the proof of his claim, Hall sets forth the following statement relative thereto:

"Said deponent hereby stipulates that by filing notice of this claim he does not waive any right of action that he now

has to recover possession of said certificates or the value thereof against either of the bankrupts or any person in whose possession they may be found, or any right of action that he has against either or both of said bankrupts for the conversion of said certificates to their own use, when said bankrupts knew that said certificates were not their property, and never had been; and that the said deponent does not waive any right whatsoever of any kind, nature or description against said bankrupts, or either of them, for or on account of the failure of the bankrupts or either of them to return said certificates to said deponent, and for the unlawful hypothecation and conversion of the same by said bankrupts, or either of them."

In this claim the essential question is as to the effect of Hall's proof of his claim in bankruptcy as a waiver of his right to recover the shares of stock covered by the receipt. We are of the opinion that, in view of the reservation just made, there was nothing in Hall's conduct amounting to an election to pursue his claim as a creditor in bankruptcy, which now prevents his recovery of the certificates of stock in question. It is true that he voted at the first meeting of the creditors on December 19, 1904, upon an informal ballot for trustee in bankruptcy, and at the formal election of trustees on December 21, 1904, Mr. Hall did not vote, though the referee finds that he participated actively at the meetings held for the election of trustee. We are of the opinion that the reservation of Hall evidenced his intention to hold on to whatever rights he had in his shares of stock, and there is nothing in his conduct which should preclude him, after he had discovered that the shares had been returned to the assignee in bankruptcy, from reclaiming them as his own property.

We find no error in the judgment of the Circuit Court of Appeals for the Second Circuit, and the same is

*Affirmed.*