# BENSON *v.* PALMER.

FORMER ADJUDICATION; HABEAS CORPUS; EXTRADITION; CRIMINAL LAW.

1. The discharge on habeas corpus, by a Federal court of another jurisdiction, of a person detained in that jurisdiction, under process issued upon a complaint filed before a United States commissioner, to answer an indictment found against him in this District, does not preclude his subsequent arrest here and detention for the purpose of prosecution under the same indictment.

2. Where a party is arrested in extradition proceedings, an indictment found and bench warrant issued in the jurisdiction to which it is sought to take him are not the process upon which he is arrested in the foreign jurisdiction, but merely the evidence upon which the complaint there filed is based.

3. It is not the policy of our criminal jurisprudence that an accused shall be permitted to escape trial on the merits of the charge against him, through a mere defect in the preliminary proceedings leading up to the trial.

4. No discharge by writ of habeas corpus will operate as a bar to further proceedings in the same case, unless the inquiry on the petition for the writ involved the fullest investigation into the merits of the case —the guilt or innocence of the accused.

No. 1893. Submitted May 7, 1908. Decided June 9, 1908.

HEARING on an appeal by the petitioner from an order of the Supreme Court of the District of Columbia, dismissing his petition for the writ of habeas corpus.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order of the supreme court of the District of Columbia denying the petition of the appellant, John A. Benson, for a writ of habeas corpus. On February 17, 1904, the grand jury of the United States for the District of Columbia found an indictment against appellant and others, charging a violation of the provisions of sec. 5440 of the Revised Statutes of the United States. On the 20th of February, 1904, one William J. Byrnes made a complaint under oath before one Shields, a United States commissioner for the southern district of New York, charging that the petitioner was then in said district, and was the identical person named in the said indictment pending in the District of Columbia, a copy of which indictment, together with a copy of the bench warrant of the supreme court of the District of Columbia issued thereon, were attached to the said complaint. On the same day, Shields issued a warrant for the arrest of appellant. The warrant was executed by the United States marshal for the said district, and the appellant was committed to the custody of the marshal until an examination could be had before the commissioner.

On June 7, 1904, the commissioner made an order committing the appellant for trial in the District of Columbia, and remanding him to the custody of the said marshal until a warrant for his removal to the District of Columbia could be issued by the United States district judge for the southern district of New York. On the same day, appellant filed a petition for a writ of habeas corpus in the circuit court of the United States for the southern district of New York. After alleging the circumstances relating to his arrest and commitment, appellant claimed that he was illegally restrained and denied his liberty upon "a written complaint of one William J. Byrnes, which sought to charge your petitioner, together with Frederick A. Hyde, and others, with a conspiracy to defraud the United States in violation of sec. 5440 of the United States Revised Statutes. That said complaint was made wholly upon information and belief, and the complainant's belief was stated to be

based upon a copy of an indictment against your petitioner, Frederick A. Hyde and others, said to have been found in the Supreme Court of the District of Columbia at a criminal term thereof, on the 17th day of February, 1904." The petition further charged that the arrest and detention of appellant by order of the United States commissioner was without due process of law and in violation of the Constitution of the United States, in that the complaint, alleged indictment, and evidence, which constituted the sole authority for appellant's arrest and commitment, charge no crime against the United States, and show no violation by appellant of the provisions of sec. 5440 of the Revised Statutes, or any other statutes of the United States, but show affirmatively that no offense was committed by appellant upon which he could be tried in the District of Columbia. A writ of habeas corpus was allowed on the same day by the circuit court, and also a writ of certiorari directed to the United States commissioner to certify the record in the case before him to the said court. Return was made to each writ, and on the 28th of July, 1904, the said circuit court ordered the discharge of the petitioner because, in its judgment, it appeared that the appellant was illegally held, for the reason the record before it did not set forth facts tending to establish a conspiracy to commit an offense against the United States. The United States attempted to take an appeal from the order discharging the appellant, to the circuit court of appeals for the second circuit. The appeal, however, was dismissed for want of jurisdiction.

No further attempt was made on the part of the officers of the United States to extradite the appellant. On May 26, 1905, the appellant, being found in the District of Columbia, was arrested upon another bench warrant issued under the same indictment. On April 6, 1908, his surety surrendered him in open court, and he was taken in custody by the appellee, Aulick Palmer, the United States marshal for the District of Columbia. Appellant then presented to the supreme court of the District of Columbia a petition for a writ of habeas corpus, claiming that his detention was based solely upon the indictment original-

ly found against him, and that this indictment had been finally
and conclusively adjudged by the circuit court of the United
States for the southern district of New York, having jurisdic-
tion as well of the person of appellant as of the subject-matter
of this proceeding before it, to state no crime against the United
States; that the judgment of said court concluded the power of
the courts of the District of Columbia to hold appellant under
said indictment; that appellant was being held to answer an in-
famous crime upon an indictment which had been declared by a
court of competent jurisdiction to be insufficient and invalid,
and that he was not again subject to arrest on account of said
indictment. Upon hearing, an order was entered in the supreme
court of the District of Columbia denying the prayer of ap-
pellant. From that order the case comes here on appeal.

*Mr. Arthur A. Birney* and *Mr. Joseph C. Campbell* for the
appellant.

*Mr. Daniel W. Baker,* United States Attorney for the Dis-
trict of Columbia, *Mr. Aruthur B. Pugh,* Special Assistant
Attorney General, and *Mr. Stuart McNamara,* Assistant United
States Attorney, for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The only question presented for our consideration is whether
or not the discharge, by writ of habeas corpus, of appellant in
New York from detention in an extradition proceeding under
process issued upon a complaint filed before a United States
commissioner to answer an indictment found against him in the
District of Columbia, forbids his subsequent arrest and deten-
tion, for the purpose of prosecution in said District, upon a
bench warrant issued under the same indictment. The United
States district court for the southern district of New York had
jurisdiction of the matter before it, only for the purpose of
extradition. It had no greater jurisdiction than was possessed
by the United States commissioner who issued the warrant upon

which appellant was detained. That warrant was the process upon which appellant was held. It was issued upon a complaint filed before the commissioner. The indictment filed in the supreme court of the District of Columbia, and the bench warrant issued thereon, were not the process upon which appellant was arrested in New York, but the evidence upon which the complaint was based. The indictment found against the appellant in the District of Columbia furnished the basis upon which he could there be arrested and tried for the offense charged. There alone could the merits of the case—the guilt or innocence of the accused—be determined. The proceeding in New York was based solely upon the complaint filed before the commissioner. It had nothing to do with the merits of the case,—the guilt or innocence of appellant. It related solely to the question of his removal. The proceedings in New York were merely preliminary and ancillary to the proceedings in the District of Columbia.

If apprehended outside of the District of Columbia, the intervention of two processes was necessary to hold appellant for trial. One process was issued upon the complaint filed in New York, which was for the sole purpose of accomplishing his removal to the District of Columbia; the second process was the bench warrant issued upon the indictment under which he could alone be held in the District of Columbia after the process for removal had served the purpose of bringing him here. In fact, in this case only the second process was used. Appellant was arrested in the District of Columbia on a bench warrant issued upon the indictment subsequent to his discharge in New York. The intervention of the first process was not necessary to bring him within the jurisdiction of the trial court. Hence that court will not stop to inquire how appellant came before it, provided the process under which he is immediately held is sufficient to give it jurisdiction. Any action that may have been taken under the first process will have no more effect upon the jurisdiction of the trial court than would the action of a committing magistrate. In both cases, they are preliminary proceedings to bring persons accused of crime within the juris-

diction of the court empowered to try the charge on its merits. Hence the discharge of appellant from the process under which he was held in the proceedings in New York has nothing to do with the process upon which he was subsequently arrested and held for trial in the District of Columbia. The inquiry into the sufficiency of the indictment was for the sole purpose of ascertaining if it set forth evidence upon which the complaint before the commissioner in the removal proceedings could be sustained; in other words, whether the indictment charged a crime against the United States, or, on its face, disclosed probable cause for the removal of appellant to the District of Columbia for trial.

It should be remembered that the question of whether or not appellant should be removed was not one to be determined alone from the indictment. It was to be decided upon the evidence offered in support of the complaint in the removal proceedings. The indictment was but a piece of evidence that might or might not be decisive of the issue of extradition. In fact, an indictment was not necessary at all in order to secure the removal of appellant. *Greene* v. *Henkel,* 183 U. S. 249, 46 L. ed. 177, 22 Sup. Ct. Rep. 218; *Pierce* v. *Creecy,* 209 U. S. 387, 52 L. ed. —, 28 Sup. Ct. Rep. 714; *Price* v. *McCarty,* 32 C. C. A. 162, 59 U. S. App. 578, 89 Fed. 84. As was said by the court in *Greene* v. *Henkel,* p. 260: "The finding of an indictment does not preclude the government under sec. 1014, U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 716), from giving evidence of a certain and definite character concerning the commission of the offense by the defendants in regard to acts, times, and circumstances which are stated in the indictment itself with less minuteness and detail; and the mere fact that in the indictment there may be lacking some technical averment of time or place or circumstance, in order to render the indictment free from even technical defects, will not prevent the removal under that section, if evidence be given upon the hearing which supplies such defects and shows probable cause to believe the defendants guilty of the commission of the offense defectively stated in the indictment." It thus clearly appears that the indictment is

used only as evidence in support of the complaint in the removal proceedings.

It is well settled that a district judge of the United States may look into an indictment before issuing a warrant for the extradition of a prisoner, to determine whether or not it charges a crime against the United States for which the accused may be tried in the jurisdiction where the indictment was found. Quoting further from the opinion in *Greene* v. *Henkel,* supra: "We do not, however, hold that when an indictment charges no offense against the laws of the United States, and the evidence given fails to show any, or if it appear that the offense charged was not committed or triable in the district to which the removal is sought, the court would be justified in ordering the removal, and thus subjecting the defendant to the necessity of making such a defense in the court where the indictment was found. In that case there would be no jurisdiction to commit, nor any to order the removal of the prisoner." This simply announces a well-settled doctrine that, where the indictment alone is relied upon as evidence in the removal proceeding, and it fails to charge a crime against the United States, a warrant for the removal of the accused should not be issued; but it will be observed that the court distinctly limits such interpretation of the indictment to the removal proceedings, and does not extend it to subsequent proceedings, under the same indictment, in the court having jurisdiction to try the case on its merits. In other words, such a finding concludes the proceedings for removal, but not for trial.

In the case of *Re Buell,* 3 Dill. 116, Fed. Cas. No. 2102, where it was sought to remove relator from the State of Michigan to the District of Columbia to answer to an indictment there found, Judge Dillon said: "Mere technical defects in an indictment should not be regarded; but a district judge who should order the removal of a prisoner when the only probable cause relied on or shown was an indictment, and that indictment failed to show any offense against the laws of the United States, or showed an offense not committed or triable in the district to which the removal is sought, would misconceive his duty and

fail to protect the liberty of the citizen." It will be observed
that the learned jurist carefully used the expression, "when the
only probable cause relied on or shown was an indictment,"
implying not only that the indictment in such cases is used
merely as evidence in support of the charge made in the com-
plaint, but that other or additional evidence might be adduced
in support of such charge. In that case, extradition was re-
fused because of a failure of the evidence to support the com-
plaint. We think the authorities will sustain our view that the
certified copy of the indictment in this case could only be used
as evidence in support of the charge made against appellant in
the complaint filed in New York, and that the process upon
which he was there arrested and held, and from which he was
discharged, was issued upon the complaint, and not upon the
indictment.

It is not the policy of our criminal jurisprudence that an
accused shall be permitted to escape trial on the merits of the
charge against him, through a mere defect in the preliminary
proceedings leading up to the trial. No discharge by writ of
habeas corpus will operate as a bar to further proceedings in the
same cause, unless the inquiry on the petition for the writ in-
volves a full investigation into the merits of the case,—the guilt
or innocence of the accused. This is the distinction in the
leading case relied on by counsel for appellant. *United States
v. Chung Shee,* 71 Fed. 277. Chung Shee was the wife of a
Chinese merchant in Portland, Oregon, who sought to enter the
United States under the Chinese exclusion act. She was arrest-
ed, tried, and an order issued for her deportation. While she
was held under said order, she filed a petition for a writ of
habeas corpus, and, on hearing, was discharged from detention.
Subsequently she was arrested, in Los Angeles, California,
under the same act, and pleaded her former discharge as a bar
to that proceeding. The court held her former discharge was
a bar to further prosecution on the same charge, on the ground
that her guilt or innocence had been determined by a competent
tribunal, and that the inquiry in the original habeas corpus
proceeding, of necessity, involved a full investigation of the

merits of the case. The learned judge in his opinion clearly distinguishes the difference between the discharge of a prisoner upon habeas corpus in a preliminary matter, and a discharge on the merits of the case, when he said: "The further argument of the government in this connection is  \*  \*  \* that the decision of a collector denying an alien admission into this country is similar to an order, upon preliminary examination, discharging or committing a person accused of crime. With this argument, I cannot agree. The order of a committing magistrate does not purport to determine the question of innocence or guilt, and therefore the discharge of the accused, whether at the preliminary examination or a review upon habeas corpus, does not, of course, bar subsequent inquiry, indictment, or trial. It was to this situation that the supreme court of South Carolina referred tin the case of *State* v. *Fley,* 2 Brev. 338, 4 Am. Dec. 583,  \*  \*  \* where the court declare that it would be monstrous to say that the discharge of a prisoner upon habeas corpus shielded him from subsequent prosecution. The determination, however, of an alien's claim to enter the United States is wholly different. When the power and duty of so determining are committed to any officer, no matter whether such officer belongs to the executive or judicial branch of the government, the decision of such officer is an adjudication of the right involved, namely, the right of the alien to enter the country, and such adjudication is final, unless the law expressly or impliedly provides for an appeal from or review of the decision." This case clearly presents the distinction. If the inquiry on a petition for the writ of habeas corpus involves an investigation of the merits on commitment after trial by a court with full jurisdiction to investigate the question of the guilt or innocence of the accused, it is equivalent to a trial on the merits; it is a bar to any further proceedings on the same charge. But that is not the case at bar. The New York court had no power to pass upon the merits of the case. Its jurisdiction was limited to the mere independent, preliminary question of removal.

The rule that when a discharge has been granted on writ

of habeas corpus the issues of law and fact involved are *res judicata,* and that the person so discharged cannot lawfully be again arrested for the same cause, has no application when the discharge has been of a prisoner sought to be extradited. In the case of *Kurtz* v. *State,* 22 Fla. 36, 1 Am. St. Rep. 173, the appellant Kurtz was a fugitive from New York. He was arrested in Florida, and released upon a writ of habeas corpus. Later, he was rearrested, and he sued out another writ of habeas corpus. The court refused to discharge him on this writ. On appeal, the supreme court in its opinion said: "Counsel also insists that the former discharges of Kurtz by the judge below had the force and effect of *res judicata,* and that he could not be arrested a second time for the same charge. We have examined the numerous authorities submitted by counsel as well as others referred to in the text-books, and while it seems that in those States where a judgment of a court in a habeas corpus proceeding discharging or remanding to custody a prisoner is final, and a writ of error is allowed thereon, that the principle of *res judicata* is applicable, yet in none of these cases was the question of extradition involved. No case brought to our attention has decided that the principle applies where the discharge of the prisoner was from the custody of an officer holding him by virtue of a warrant of a resident governor, upon the requisition of the governor of the State from which he had fled. They are all cases where the parties were restrained of their liberty for alleged crime by some local State law, or seeking discharge from the Army or Navy, both of which required a hearing and inquiry into evidence, and a judicial determination of the facts and the law. The courts in a habeas corpus proceeding of this kind, where the prisoner is arrested for extradition, cannot go into a trial of the merits of the cause. The proceeding is only an initiatory step to a trial in another State. As to the guilt of the prisoner, they are not allowed to inquire. Their judicial powers are limited to a determination on the sufficiency of the papers and the identity of the prisoner. If the prisoner is discharged, it will not absolve him from being rearrested on a new warrant issued by the governor." To the

same effect are the cases of *Com.* v. *Hall,* 9 Gray, 262, 69 Am.
Dec. 285, and *Bassing* v. *Cady,* 208 U. S. 386, 52 L. ed. 540,
28 Sup. Ct. Rep. 392.

It is also well settled that a discharge upon a writ of habeas
corpus from imprisonment on process issued upon an indict-
ment is a bar to future arrest on the same process, but not to
arrest and detention upon another process issued upon the same
indictment. In the case of *Ex parte Milburn,* 9 Pet. 704, 9 L.
ed. 280, Milburn was imprisoned ·in the jail of the county of
Washington, on a bench warrant issued by the circuit court of
the United States for the District of Columbia, to answer an
indictment pending against him. He had been arrested on a
former capias issued upon the same indictment, on which he
gave a recognizance for his appearance. He did not· appear,
and the recognizance was forfeited; and a scire facias was
issued against him and his sureties. At the same term, another
writ of capias was issued against him, which was returned
*non est inventus.* Later, another writ of capias was issued, on
which he was arrested, and from which arrest he was dis-
charged on a writ of habeas corpus by the chief justice of the
circuit court, on the ground that the writ was improperly issued.
Subsequently a bench warrant was issued by order of a majority
of the judges of the circuit court, on which he was· arrested and
placed in custody. He applied for a writ of habeas corpus to
the Supreme Court of the United States, which was refused.
Mr. Justice Story announced the opinion of the court on
this feature of the case in one sentence, as follows: "A dis-
charge of a party, under a writ of habeas corpus, from the
process under which he is imprisoned, discharges him from any
further confinement under the process, but not under any other
process which may be issued against him under the same in-
dictment." This conclusively disposes of the case before us.
There, Milburn was discharged on a writ of habeas corpus from
the preliminary process under which he was imprisoned to
await trial on an indictment pending against him. Here, ap-
pellant was discharged on a similar writ from a process issued
upon a complaint in New York in a preliminary proceeding to

subject him to trial on an indictment found in the District of Columbia. There, Milburn was arrested and lawfully held upon another process issued against him upon the same indictment. Here, appellant was arrested and is being tried upon another process issued against him upon the same indictment.

It may be suggested, however, that the indictment in *Milburn's Case,* and the other cases here cited, were not condemned for failure to charge a crime, and in that particular they are not in point with the one here under consideration. To hold, as was done in *Milburn's Case,* that the court having jurisdiction of the subject-matter of the charge contained in the indictment has power to try the accused on process issued thereon, irrespective of a former discharge by writ of habeas corpus on another process in a preliminary proceeding, is equivalent to a declaration that the court ordering the discharge under such circumstances has no power to place any limitation whatever upon the jurisdiction of the court trying the case on its merits. We think the rule a sound one, and applying it to the case at bar, the trial court in the District of Columbia can proceed without regard to the action taken in New York in the removal proceedings.

It therefore being well settled that a discharge on habeas corpus prior to trial is not a bar to a subsequent indictment and trial upon the merits by a court having jurisdiction of the subject-matter of the offense charged (*State ex rel. Barbee* v. *Weatherspoon,* 88 N. C. 19; *Ex parte Cameron,* 100 Ala. 395, 14 So. 97), it would certainly be extraordinary to hold that a court has power to indict and try an accused after discharge by habeas corpus in a preliminary proceeding, but that it could not try the accused on the same indictment pending against him at the time of his discharge. Such a declaration would be anomalous, for the same objection that could be made to an indictment in existence at the time of the discharge of the accused, could be interposed to any other indictment charging him with the same offense; hence the result would be that the discharge would operate as a bar to any future prosecution for the same offense. It was beyond the jurisdiction of the

court in New York to discharge appellant for mere formal defects in the indictment. *Pierce* v. *Creecy,* 209 U. S. 387, 52 L. ed. —, 28 Sup. Ct. Rep. 714. He issued the writ on the broad ground that the indictment was bad in substance; yet counsel for appellant insist that he cannot be tried on that indictment, but may be tried on another indictment containing the same charge, however slightly changed in verbiage. Any other indictment containing the same charge must, of necessity, be the same in substance as the one condemned; hence it is hard to conceive just how another indictment could be drawn, containing the same charge, that would not be subject to a similar objection.

Equally anomalous is the contention of counsel for appellant that the ruling of the circuit judge in New York is final and operates as a bar to further proceedings upon the same indictment. If that contention is correct, the reverse would be true,—that where an indictment in extradition proceedings has been sustained by the court ordering removal, the accused would be estopped from questioning the sufficiency or the validity of the indictment in the court having jurisdiction of the subject-matter of the offenses charged. The mere statement of the conclusion to which the reasoning would lead refutes itself. As said by Mr. Justice Peckham in *Greene* v. *Henkel,* 183 U. S. 261, 46 L. ed. 189, 22 Sup. Ct. Rep. 218: "It follows also that a decision granting a removal under the section named [sec. 1014, U. S. Rev. Stat. U. S. Comp. Stat. 1901, p. 716], where an indictment has been found, is not to be regarded as adjudging the sufficiency of the indictment in law as against any objection thereto which may subsequently be made by the defendants." Of course, the right of objection to the sufficiency of the indictment is reserved to the defendant in the court having jurisdiction to try the accused for the offense charged therein; and it logically follows that if the decision of the judge granting the requisition is not conclusive upon the defendant, it cannot, for the same reason, be conclusive upon the government.

The judgment refusing the writ is affirmed with costs, and it is so ordered.                              *Affirmed.*