**H & B AMERICAN MACH. CO. v. UNITED STATES.**

No. M–381.

Court of Claims.

June 3, 1935.

Howe P. Cochran, of Washington, D. C. (Frederick S. Winston and C. Leo De Orsey, both of Washington, D. C., of counsel), for plaintiff.

George H. Foster, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (W. W. Scott, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff duly filed its income and profits tax returns for the years 1916, 1917, 1918, 1919, and 1921, and paid the taxes shown to be due thereon. Subsequently, on December 14, 1925, the Commissioner of Internal Revenue made an additional assessment of $4,158.30 for the year 1916, $62,785.53 for the year 1917, and $254,710.56 for the year 1918.

On December 19, 1925, the Commissioner determined an overassessment in favor of plaintiff of $58,929.86 for the year 1919 and $204,036.43 for the year 1921, which amounts, as overpayments, were, on April 16, 1926, credited to the additional taxes assessed as aforesaid for the years 1916, 1917, and 1918. The balance of such additional taxes amounting to $58,688.10 was paid by plaintiff in cash on February 8, 1926.

On September 23, 1929, plaintiff filed three claims for refund on form 843 covering the years 1916, 1917, and 1918, and demanding the return of $4,158.30, $62,785.53, and $254,710.56, respectively, on the ground that the additional taxes were assessed and collected after the expiration of the statutory period of limitations.

On the same day plaintiff filed two claims for refund on form 843 covering the years 1919 and 1921, and demanding the return of $58,929.86 and $204,036.43, respectively, on the grounds that the amounts constituted overpayments illegally retained by the defendant and withheld from the plaintiff.

The sole issue in the case is whether the assessments made on December 14, 1925, of additional taxes for the years 1916, 1917, and 1918, were made within the prescribed statutory periods as extended by valid waivers on file.

The return for 1916 was filed on February 12, 1917. The five-year period for assessment and collection provided in section 250 (d) of the Revenue Act of 1921 (42 Stat. 265) expired on February 12, 1922. On December 23, 1924, the plaintiff filed with the Commissioner a waiver extending the period for assessment for one year from the date of the waiver, which would be December 23, 1925. The assessment made on December 14, 1925, was within this period, and consequently was in time. The fact that the waiver of December 23, 1924, was executed after the running of the statute of limitations does not render it invalid. McDonnell v. United States, 288 U. S. 420, 53 S. Ct. 410, 77 L. Ed. 869; Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349; Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335. The assessment having been timely made, collection could, under section 278 (d) of the Revenue Act of 1924 (26 USCA § 1061 note), be made any time within a period of six years thereafter. It is clear the plaintiff is not entitled to recover as to the year 1916.

The return for the year 1917 was filed on March 27, 1918, the statutory five-year period expiring on March 27, 1923. The return for 1918 was filed on June 13, 1919, the five-year period on assessment and collection expiring on June 13, 1924. It is agreed that valid waivers were on file which extended the five-year statutory period for the year 1917 to April 1, 1925, and which extended the five-year statutory period for the year 1918 to January 10, 1925. Within the lifetime of these waivers the plaintiff, on December 11, 1924, executed and filed with the Commissioner a waiver for the years 1917, 1918, and 1919,

which reads: "This waiver is in effect from the date it is signed by the taxpayer and will remain in effect for a period of one year after the expiration of the statutory period of limitation within which assessments of taxes may be made for the year or years mentioned, or the statutory period of limitation as extended by section 277 (b) of the Revenue Act of 1924 or by any waivers already on file with the bureau, *or for a period of one year from date of signing hereof.*" (Italics supplied.)

This waiver was executed on treasury mimeographed form 1435–M, the italicized words having been added to the printed form by typewriter prior to plaintiff's signature. The waiver was not signed by the Commissioner until some time in the month of January, 1929, more than three years after the assessment and collection of the taxes involved.

Assuming that the waiver of December 11, 1924, was valid, the case hinges entirely on the date of its expiration. If the formal printed words of the waiver are held to prevail, it expired on January 10, 1926, in respect to the assessment of taxes for the year 1918, and expired on April 1, 1926, with respect to the assessment of taxes for the year 1917, and the additional assessments having been made on December 14, 1925, for each of the years, were timely made. If, on the other hand, the typewritten words are held to prevail, the statute of limitations on the assessment of taxes for both 1917 and 1918 was extended to December 11, 1925, and expired on that date, and the Commissioner's right to assess taxes for either 1917 or 1918 was barred when the assessments were made. The contradiction between the formal printed provisions of the waiver in respect to the date of its expiration, and the typewritten provision added thereto, is inherent and cannot be reconciled. In this situation it becomes the duty of the court to interpret and construe the waiver, including these conflicting provisions, to determine if possible its true intent and meaning.

The courts long ago laid down the rule for the construction of contracts partly printed and partly written, where there is a conflict between the printing and writing. In such cases the writing will prevail over the printing. Handwriting will prevail over typewriting and typewriting over printing. See 13 Corpus Juris (§ 498) 10.

The Supreme Court has followed this rule of construction. In Hagan v. Scottish Ins. Co., 186 U. S. 423, 22 S. Ct. 862, 864, 46 L. Ed. 1229, in discussing a marine insurance policy in which a written provision had been inserted that was inconsistent with printed portions of the policy, the court said:

" * * * Courts will not endeavor to limit what would otherwise be the meaning and effect of the written language, by resorting to some printed provision in the policy, which, if applied, would change such meaning and render the written portion substantially useless and without application. * * *

"If there be any inconsistency between the written provision of the policy and the printed portions thereof, the written language must prevail. It becomes necessary, therefore, to determine what is the meaning of the written portion of the policy. * * *"

The rule was reannounced in Thomas v. Taggart, 209 U. S. 385, 28 S. Ct. 519, 520, 52 L. Ed. 845, where it is said: "It is a well-settled rule of law, that, if there is a repugnancy between the printed and the written provisions of the contract, the writing will prevail."

The reason for this rule is that written words are the immediate language and terms selected by the parties themselves for the expression of their meaning, while the printed form is intended for general use without reference to particular objects and aims. The plaintiff undoubtedly had some object in view in adding the typewritten words to the formal printed language of the waiver, otherwise we think it must be assumed he would have signed the waiver in the form in which it was prepared by the government. The obvious and manifest purpose of the typewritten provision was to limit the life of the waiver to one year from the date it was signed by the taxpayer or to December 11, 1925, and under the universally accepted rule followed by the courts in the construction of like conflicting provisions in a contract, that was also the legal effect of the added clause. We are not unmindful, of course, that a waiver has been held not to be a contract, Florsheim Brothers Dry Goods Company v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542, but is essentially a voluntary, unilateral waiver of a defense by a taxpayer. Stange v. United States, supra. However, the rule of construction as to conflicting printed and written provisions of a contract is necessarily

applicable to the construction of like contradictory provisions of a waiver, if the intent of the parties as to be ascertained from the instrument itself. The fact that the waiver was a unilateral instrument, voluntarily given by the plaintiff, only emphasizes the importance that must be given to the added typewritten provision in construing the intent and meaning of the waiver as a whole. This provision consciously and purposely altered preceding provisions of the regular printed form of the waiver, and unless it be entirely ignored and regarded as meaningless, it must be held to be a clause of limitation on the preceding printed provisions, and controlling as to the effective life of the waiver.

The defendant argues that in construing the different clauses of the waiver the word "or" must be accorded its ordinary and usual disjunctive signification, as "either this or that," thus making the conflicting provisions of the waiver alternative and giving to the Commissioner authority to make assessment within the period prescribed in "either" of the clauses. While the word "or" generally is used as a disjunctive particle that marks an alternative corresponding to "either," as "either this or that," or "one or the other," the word is by no means confined to that use. The word is frequently used in its copulative, and not in its disjunctive, sense, in which case the courts have not hesitated to construe it as meaning "and." It has frequently been construed as equivalent to "to wit," that is, explanatory of preceding words. State v. Boncher, 59 Wis. 477, 18 N. W. 335; People v. Latham, 203 Ill. 9, 67 N. E. 403. It is also construed as a word of substitution in wills, as where property is left to a certain person "or" to his legal representatives. It has also been held that the word "or" in a clause of a will giving all the residuary estate of the testator to his "spinster or unmarried nieces," six of his nieces never having been married, and two being widows at the time of his death, was not used disjunctively, and that the testator did not mean to present an alternative to his executor, and authorize him to pay to either class of nieces at his own election, but under the will the widows took equally with the spinsters. In re Conway's Estate, 181 Pa. 156, 37 A. 204. The books are full of familiar instances in which the word "or" appearing in wills, deeds, contracts, statutes, insurance policies, etc., is held not to have been used in its ordinary disjunctive signification. The courts in determining the sense in which the word is used look to the context and the circumstances of the case. Whenever it is necessary to give effect to the intent with which words are used "or" is not accorded its ordinary disjunctive meaning, but is construed in such manner as will effectuate the intention of the parties.

It is clear, we think, that the added typewritten clause "or, for a period of one year from date of signing hereof," was not intended by the plaintiff as an alternative of preceding printed provisions of the waiver. As an alternative provision it was meaningless as the next preceding clause had extended the time for making assessment for a longer period than one year from the date of the waiver. If the plaintiff had intended to give a waiver for more than one year, or for the period provided in the last clause of the printed form, he could have evinced that intent by signing the printed form, and it is reasonable to assume that he would have done so. The plaintiff, however, did not do this but added to the printed form a typewritten clause making the waiver good for only one year from its date. There can be no doubt that plaintiff intended this clause to be a limitation on the preceding printed provisions of the waiver, and not an alternative of such provisions. The word "or" as used in the added typewritten clause cannot, therefore, be accorded its ordinary disjunctive signification.

The directors of the plaintiff company at an informal meeting held early in 1924 decided to give no waivers thereafter for more than one year's duration. The secretary and treasurer of the plaintiff were instructed to sign no waivers that, after July, gave more than one year's time to the government. The waiver of December 11, 1924, was signed on behalf of the plaintiff company by its secretary, Mr. E. L. Martin, who testified that he signed it only because of the provision limiting it to a period of one year from the date of signing.

The Commissioner of Internal Revenue prior to the institution of suit construed the waiver as expiring on December 11, 1925, or one year from the date on which it was signed by plaintiff, as shown in his letter of October 17, 1929, notifying plaintiff that its claims for refund would be rejected. The letter was addressed directly to the contentions made by plaintiff in the claims for refund that the assessments and

collections involved were made after the period of limitation had expired. In reference to the year 1917 he stated:

"On December 11, 1924, you gave a waiver covering the years 1917, 1918, and 1919 effective for assessment and collection for a period of one year after it was dated or until December 11, 1925.

"The tax was assessed in December, 1925 under the terms of the waiver, and collected by credit during the year 1926."

In reference to the year 1918 the Commissioner stated:

"There is also on file a waiver given December 11, 1924, covering the years 1917, 1918, and 1919, effective for assessment and collection to December 11, 1925.

"The tax was assessed in December, 1925 under the terms of the waiver and collected by credit during the year 1926."

In respect to each of the years he made the further statement: "Inasmuch as the assessment was timely and was made after the enactment of the Revenue Act of 1924, the provisions of section 278 (d) of that act are applicable and the Commissioner has six years from the date of assessment within which to enforce collection."

The Commissioner's statement that the assessments were timely made under the waiver was clearly erroneous, as the assessments were made on December 14, 1925, and the waiver, by the Commissioner's own construction, expired on December 11, 1925. The statement by the Commissioner in the letter that the waiver expired on December 11, 1925, would not bind the government if he was mistaken as to the fact, but it is important in that it shows that prior to the institution of suit he placed the same interpretation on the waiver as did the plaintiff—that it expired by its own terms on December 11, 1925. This fact, although of itself not controlling, is entitled to great weight in the interpretation of the intent and effect of the waiver if its terms be regarded as otherwise of doubtful meaning.

The statutory period in which the Commissioner was authorized to assess taxes against the plaintiff for the years 1917 and 1918, as extended by the waiver of December 11, 1924, expired on December 11, 1925. Therefore the assessments made on December 14, 1925, were barred by the statute of limitations when made, and the subsequent collection of the taxes by cash and credit was illegally and erroneously made. We are not concerned with the question as to whether the plaintiff rightly owed the United States the taxes, but only with the question as to whether the assessments were timely made. Congress has prescribed a period of limitation within which the Commissioner of Internal Revenue may assess taxes, as it has prescribed a period of limitation within which taxpayers are required to file claim for refund for an overpayment of taxes. The courts can no more sustain the validity of an assessment made by the Commissioner after the expiration of the period of limitation than they can sustain the taxpayer's claim for refund where the claim is filed out of time. The law must be followed in either case, let the results be what they may.

After the assessments involved had been made for 1917 and 1918 in the respective amounts of $62,785.53 and $254,710.56, and collected through credits and a cash payment, and prior to the filing of claims for the refund of the amounts so assessed and collected, the Commissioner found overpayments for 1917 and 1918 in the respective amounts of $8,953.47 and $64,074.06. The entire overpayment for 1918 and $2,408.19 of the overpayment for 1917 were duly refunded to plaintiff with interest. The balance of the overpayment for 1917, $6,545.-29, was duly credited to an additional assessment for 1921 and interest paid thereon. Since the additional assessments for 1917 and 1918 were not timely made, the plaintiff is entitled to recover the amounts collected under such assessments, less the amounts thereof subsequently refunded, namely, $53,832.06 ($62,785.53 less $8,953.-47) for 1917, and $190,636.50 ($254,710.56 less $64,074.06) for 1918, with interest as provided by law.

Judgment is therefore awarded plaintiff in the sum of $244,468.56, with interest.

It is so ordered.