## UNITED STATES v. COHEN et al.

United States District Court
S. D. New York.
Civil Division.
Dec. 29, 1948.

Harry T. Dolan, Sp. Asst. to Atty. Gen., for petitioner-plaintiff.

Abraham J. Halprin, of New York City, for defendants Cohen, Halprin, Klatsky, and Kucharski.

Root, Ballantine, Harlan, Bushby & Palmer, of New York City (John E. F. Wood, of New York City, and Victor G. Beaudet, of Flushing, N. Y., of counsel), for defendant Knickerbocker Printing Co.

RYAN, District Judge.

This motion is made by the owners of a parcel of real property, the fee to which the Government has taken in condemnation, for an order directing payment of funds deposited in the Registry of this court to the holder of the first mortgage and the balance to the owners.

The tenant-lessee appears and opposes any payment to the owners until the value of its leasehold interest has been fixed and due provision made as compensation for its taking.

The pending proceedings concern certain property located in two square blocks—from East 23rd Street and East 25th Street, First Avenue to Avenue A, Borough of Manhattan, New York City. The notice

and petition in condemnation were filed by the Government on September 30, 1948. The property was taken by declaration of taking filed on November 29, 1948, under and in accordance with the Act of Congress approved February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. § 258a, for use in connection with the establishment of a Veterans Administration Hospital. The Government, on November 29, 1948, deposited with the Registry of this court the sum of $620,000 for Parcel "8," the property involved in this motion. Judgment on the declaration of taking was filed on December 1, 1948.

Gertrude Cohen, Claire Joy Halprin, Bessie Klatsky and Hazel Kucharski (hereafter, the landlord-owner), were the owners in fee simple each owning a one-fourth interest in Parcel "8," said premises being known as 425-435 East 24th Street, Borough of Manhattan, New York City. The Guardian Life Insurance Company of America (named in the proceedings as Guardian Life Insurance Company) is the owner of the first mortgage upon which there is unpaid $276,262.01. Knickerbocker Printing Corporation (named in the proceedings as Knickerbocker Printing Co., hereafter, the tenant) is the lessee.

The lease dated May 8, 1946, is made between Knickerbocker Printing Co., as tenant, and 435 East 24th Street Corporation, as landlord; it covers the entire eleven-story building erected on the property; and it is for a term of 21 years to commence on May 1, 1946, and end on April 30, 1967. The 435 East 24th Street Corporation is an entirely owned and controlled stock subsidiary of Knickerbocker Printing Co., so that the tenant, in effect, granted itself the lease and made its own terms and conditions.

The present landlord-owner acquired title by purchase from the 435 East 24th Street Corporation under contract dated November 11, 1946, paying as purchase price $185,000 in cash, and the balance by taking subject to a first mortgage of $297,737.50. The mortgage has since been reduced by principal payments amounting to $21,475, making the total cash investment $206,475, in addition to closing disbursements.

The tenant contends that by the terms of its lease it is entitled to receive a portion of any award made in condemnation for the property, and further urges that the property was sold at a price, which in the light of subsequent real estate developments in New York City is burdened by an increasingly valuable lease, which allegedly has eaten into the equity of the landlord-owner of the property.

There appears to be no reason why payment should not be made to the Guardian Life Insurance Company for the full amount due on the first mortgage. We are concerned then with the disposition of the balance remaining on deposit, only.

The court may award and direct immediate payment to the landlord-owner of the entire deposit, part or none of it, but in any event only of such portion as to which he has a clear and unquestionable right. The funds deposited in court stand in place of the realty itself; they are subject to claims of all lienholders against the property at the time of taking. United States v. Certain Land in City of St. Louis, Mo., D.C.Mo.1939, 29 F.Supp. 92. A lease with an unexpired term of more than 20 years and with the tenant in actual possession is such a lien.

The landlord-owner claims upon the theory that the lease by its terms expired with the taking. This involves an examination of the lease.

The lease is on a printed form frequently seen in courts as the subject of litigation. In its original form it is long drawn, containing thirty-four clauses many of them with a number of subdivisions. In the final form in which it was signed, we find a number of clauses partly or entirely deleted and changed by interpolation; in addition, there are four riders and an addendum of four clauses. The result is a hodgepodge affair not clearly definitive of the rights and obligations of the parties.

Our attention is first drawn to paragraph "13" of the lease, the condemnation clause contained in the original printed form, which reads as follows:

"If the whole or any part of demised premises shall be taken or condemned by any competent authority for any public or quasi public use or purpose, then, and in that event, the term of this lease shall cease and terminate from the date when

the possession of the part so taken shall be required for such use or purpose, and without apportionment of the award. The current rental, however, shall in any such case be apportioned."

To this was added Rider "45" with a notation that it was to be inserted immediately before the last sentence of the printed paragraph (13), as follows:

"In the event of such proceedings, the landlord shall give written notice of such proceeding to the Tenant and shall permit the Tenant to be joined as a party to such proceeding. The Tenant shall be entitled to receive such part of any condemnation award as may reflect the Tenant's costs and expense from moving from the premises, the value of the lease and/or the value of any improvements made by the tenant to the extent that same were not amortized over the balance of the term of the lease."

■ In endeavouring to ascertain the intention of the parties to the lease, we are to follow the well-settled rule that the writing will prevail "if there is a repugnancy between the printed and the written provisions" (Thomas v. Teggart, 209 U.S. 385, 389, 28 S.Ct. 519, 520, 52 L.Ed. 845), and this is so even though the lease is (as we have observed) but an agreement by the tenant with itself. The landlord-owner had an opportunity to call for clarification or modification of the lease at the time of purchase, and, in fact did so with reference to the rental terms. The other terms of the lease, including the condemnation clause, were accepted "as is" and without request for modification.

■ Since it appears that parole evidence may be admitted to determine what the parties intended by the word "reflect" and what in sum was the intent of the parties, the final adjudication of the rights of the landlord-owner and the tenant will have to await trial and cannot be made on this motion. The Government did not take the tenant's business or fixtures, but only the fee. Trade fixtures the tenant may remove under paragraph "38" of the lease; all alterations, additions or improvements on the property, at the landlord's option, become the property of the landlord under

paragraph "4" of the lease. What effect is to be given to the word "structural" inserted by typewriter in this clause before the word "alterations" may become the subject matter of parole evidence on the trial. Sufficient can be read in the lease to make it quite probable that it will be determined that the tenant has some right to compensation for the destruction of his leasehold interest. Just what this will amount to, is not for us at this time to say, but it seems to be at least sufficient to defeat the landlord-owner's right to receive immediate payment of the entire balance of the funds on deposit.

■ It seems, however, that the tenant has by the terms of the lease placed a value on the equity of the landlord-owner which it admits exists over and above any value of its leasehold interest. Rider "3" attached to the lease, and intended to be read as part of paragraph "9" instead of the portion deleted, reads as follows:

"This lease is subject and subordinate to any first mortgage which may now or hereafter effect the real property demised herein and to all renewals, modifications, consolidations, replacements and extensions thereof, providing same does not exceed an amount of Three Hundred Thousand ($300,000.) Dollars."

This sum of $300,000 is $23,737.99 more than the amount directed to be paid to the holder of the first mortgage. The landlord-owner would certainly be entitled to receive at least this amount as an immediate payment; but we feel that the tenant has by its lease further conceded that the landlord-owner is entitled to receive a far larger payment.

The lease provides that the tenant shall pay "all taxes, insurance premiums, water and electric charges and all other charges against the property or in connection with its maintenance, use and operation, except interest and amortization on the mortgage it being the intent and purpose that the lease shall be a 'net' lease" (Paragraph "35"). In addition, the tenant agreed to pay the landlord an annual net rental of $40,000.

From this net rental, the landlord-owner has only to pay interest on the first mort-

gage; of the amount of interest and the percentage rate, we are ignorant. It could not be greater than six percent nor amount to more than $16,575.72, which leaves a net return to the landlord-owner of $23,424.28, and this minimum return is guaranteed to him by the undertakings of the tenant in the lease for an unexpired period of 20 years—at the end of which time the landlord-owner would still have title to the land and buildings thereon. This equity is superior to any claim which the tenant may have as compensation for the taking of its leasehold interest, and is implicitly so recognized by the lease. The tenant, at this time, wants to retain the benefits of its business financing through the "sale and lease back" method, and to keep impounded in this proceeding all the funds deposited. It seems that as a matter of law the tenant is by the lease estopped from opposing all payment to the landlord-owner. An award to the tenant, even if it should succeed at the trial, which would leave the landlord-owner with less than $200,000 would on its face be inequitable and unconscionable. This amount, the landlord-owner is entitled to receive immediately.

An order may be settled on notice providing for the foregoing payments, the balance on deposit to remain subject to further application and order of the court.