In re T. A. McINTYRE & CO.

(Circuit Court of Appeals, Second Circuit. August 11, 1910.)

No. 314.

1. CORPORATIONS (§ 123*)—REPLEDGE BY PLEDGEE.
    Where a stock certificate was pledged to stockbrokers as security to protect them against loss from transactions on the market for the pledgor's account, the brokers had no right to pledge the certificate for their own debts.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 509, 510; Dec. Dig. § 123.*
    Rights and liabilities of pledgees of stock, see note to Frater v. Old Nat. Bank, 42 C. C. A. 135.]

2. EMBEZZLEMENT (§ 16*)—REPLEDGE OF PLEDGED COLLATERALS.
    Where a customer pledged stock with brokers to secure them against losses from transactions on the market for the customer's account, a repledge of the customer's stock by the brokers to secure their own debts at a time when the customer had no transaction pending with them, and when they were indebted to him, constituted larceny.
    [Ed. Note.—For other cases, see Embezzlement, Cent. Dig. §§ 17, 18, 21; Dec. Dig. § 16.*]

3. CORPORATIONS (§ 123*)—TITLE TO PLEDGED PROPERTY—ESTOPPEL.
    Where the owner of stock pledged the certificate with brokers to secure them against losses in transactions to be had for his account, indorsing a transfer of the certificate in blank, he thereby exposed himself to the risk of losing the stock which was subsequently pledged by the brokers for their own debts, if the pledgee in good faith and for a valuable consideration found it necessary to sell the stock in order to secure payment of advances, under the doctrine of estoppel, but did not by such transfer part with his title to the stock in the event the pledgee found it unnecessary to sell the stock in order to satisfy the debt for which it was pledged.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 539; Dec. Dig. § 123.*]

4. BANKRUPTCY (§ 140*)—PLEDGED PROPERTY—IDENTIFICATION—RECOVERY.
    The owner of a stock certificate pledged it with his brokers as security for losses that might occur in certain contemplated stock transac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tions, and they without authority, and while the owner has no transaction pending and was not in debt to ·them, pledged the stock, with other securities, for a loan. After the brokers became bankrupt, the pledgee satisfied the loan out of other securities, retaining the original certificate so pledged until it was delivered to the bankrupts' trustee. *Held*, that the pledgor was entitled to recover the certificate as his sole property from the bankrupts' trustees, and was not required to suffer the same to be sold with the remaining securities pledged for such loan, and to contribute proportionately with all the securities pledged to the payment of the loan.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

5. CORPORATIONS (§ 123*)—PLEDGE OF STOCK—USE OF PROPERTY BY BAILEE —RECOVERY.

Petitioner owned stock, which she loaned to brokers, with permission to use the same in their business; the stock to continue her property, and remain in her name on the books .of the corporation, and dividends to be paid to her. The brokers pledged the stock, with other collateral, as security for a loan, and after the brokers became bankrupts the loan was paid by the application of other collateral, and the stock was de-·livered to the bankrupts' trustees. At the time of bankruptcy it was worth $10,350, and at the time it was ordered sold by the trustee it was worth $16,750. *Held*, that the stock was not unlawfully pledged, it having survived the risks to which petitioners' contract with the brokers exposed it, and, having been fully identified, it remained her stock, subject to such liens and obligations as had accrued against it with her consent, and that, though it was bound to contribute with the other stock to the payment of the loan for which it was pledged it was only bound to contribute on the basis of its value at the time of bankruptcy.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 123.*]

Petitions to Review and Appeals from an Order of the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings by T. A. McIntyre & Co. Mary H. Hudson and another petition to review, and appeal from, an order of the District Court of the Southern District of New York disposing of certain property of which the bankrupts' trustees had taken possession. Reversed and remanded.

See, also, 174 Fed. 627, 98 C. C. A. 381; 176 Fed. 552, 100 C. C. A. 140; 181 Fed. 960.

Ceylon H. Lewis and Will B. Crowley, for appellant Hudson.

Putney, Twombly & Putney (L. H. Hall, of counsel), for petitioner and appellant Pippey. ;

Irving L. Ernest and Wellman, Gooch & Smyth (Frederich Scofield, of counsel), for appellee Stone.

Edward P. Ward, for appellee and respondent Connor.

D. Raymond Cobb, for respondent trustees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. For some time prior to April 24, 1908, the firm of T. A. McIntyre & Co. had been engaged in the general brokerage business in the city of New York. On that day the petition in bankruptcy was filed against the firm and the individual members thereof, and receivers were appointed. Adjudication fol-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lowed on May 21, 1908, and on July 24, 1908, trustees were elected and qualified.

On March 4, 1908, the Metropolitan Trust Company made a loan to the firm of $200,000, receiving as collateral therefor certain certified checks, bonds, and certificates of stock indorsed so as to pass by delivery. It was agreed between them that substitutions might from time to time be made in the securities pledged. After bankruptcy, and on April 24th, the trust company applied the certified checks toward the payment of the loan, and thereafter from time to time proceeded to sell some of the pledged securities, until on May 6th it had realized enough to repay the principal and interest of the loan. It then held a cash balance of $832.16 and the following securities, which it had not found it necessary to sell, viz.: 300 shares International Power Company, common; 200 shares American Can Company, preferred; 18 shares Pullman Company; and 66 shares United States Steel, preferred.

On May 26th an order was made directing the trust company to turn over this cash balance and these securities to the receivers, which was done, and receivers or trustees have ever since held possession of them. The order further directed all persons making claim to any of the stock, bonds, and securities to file their claims with the referee in bankruptcy, to whom as special master was referred the determination of all rights, titles, and interests in and to any and all of the said certificates of stock or the proceeds thereof, and the special master was directed to "adjust, determine, and adjudicate the rights, titles, interests, equities, claims, and liens in and to any of the certificates of stock or the proceeds thereof, pledged," etc.

## Appeal of Pippey.

On March 14, 1908, Pippey, being then the owner of certificate No. 10,277 for 18 shares of Pullman Company common stock standing in his name, indorsed a transfer in blank on the certificate and delivered the same to McIntyre & Co. as security for transactions thereafter to be had between them, no authority to repledge the stock being given to McIntyre & Co. Transactions were had, some stock was bought and sold, and on April 9th all pending transactions were closed out by the sale of 100 shares Union Pacific, and the firm owed to Pippey about $500. On April 23d McIntyre & Co. pledged Pippey's Pullman stock with the trust company as a substituted collateral security for the loan of $200,000. On April 25th Pippey applied to the receivers for the return of his certificate, and was informed that it was in the possession of the trust company. On April 30th he demanded it from the trust company, and directed them not to sell the same. By May 6th the company had liquidated its claim of $200,000 out of the securities sold, and still held Pippey's certificate for 18 shares of Pullman Company. On May 16th he again demanded return of the stock, and, that being refused, brought a replevin action against the trust company in the Supreme Court of the state to recover said stock. The order directing the trust company to turn over the certificate to the receivers and enjoining Pippey from prosecuting his replevin suit was made on May 26th.

It is now contended that the District Court had no jurisdiction to make such an order, so far as Pippey and his stock were concerned. Whether or not that court had jurisdiction to authorize its officers to take possession of the property of a third person, not then held by the bankrupt, but in the hands of another person, who asserted no title to it, a controversy as to its possession between the owner and the custodian being then actually pending in the state court, so that the property had been brought within the jurisdiction of such state court, is a question we need not now decide. No appeal from or petition to revise this order was taken within the time allowed; but Pippey appeared before the special master and litigated his case. It will be necessary only to determine whether or not he is now entitled to the return of his stock, the identity of which has at no time been lost. The certificate No. 10,277, which the trustees now hold, is the very same one which he intrusted to McIntyre & Co. on March 14, 1908. The stock was deposited with McIntyre & Co. merely as security to protect them against any losses from transactions on the market for Pippey's account. The firm had no right to pledge them for any of its own debts. When it did pledge them to the trust company, the day before its failure, the firm had no transaction pending and was itself indebted to Pippey. This was a larceny of his stock. Tompkins v. Morton Trust Co., 91 App. Div. 274, 86 N. Y. Supp. 520; Kavanaugh v. McIntyre, 128 App. Div. 722, 112 N. Y. Supp. 987. No one disputes that proposition. By reason of the circumstances that when he left the certificate with the brokers it was duly indorsed with a transfer in blank executed by himself, he exposed himself to risk of losing his stock if the person to whom it was pledged, in good faith, for a valuable consideration, found it necessary to sell it in order to secure payment of his advances. That would be solely because Pippey would be estopped from asserting his title against the person who had parted with value on the faith of the transfer he had signed. But the pledgee has not found it necessary to sell the Pullman stock. It has repaid itself from other items of the pledged property. It no longer has any lien on such property. It can no longer avail of any doctrine of estoppel. Pippey's title to his stock is absolute. He is entitled to the certificate which represents that title. The trustees, in the language of the United States Supreme Court, "have no better right in [it] than the bankrupt." Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845.

Instead of directing the trustees to return his stock to Pippey, the court has ordered it to be sold and the proceeds put into a fund with the proceeds of the 300 shares International Power Company and the 200 shares American Can Company and the $832.16 surplus realized by the trust company from the securities which it sold to repay the $200,000 loan. In this fund Pippey is to share with others whose stock was improperly pledged by the brokers with the trust company and sold by it. The amount coming to him would be less than his stock. This is practically applying the principle of general average to the situation. The pledge is treated as a common adventure, the securities sold as a sacrifice for the common benefit, to which all in-

terests are required to contribute. We do not think Pippey can be thus required to contribute. If he had been left undisturbed to prosecute the replevin suit, he would have recovered the specific piece of property, which he owned, had identified, and was entitled to. By not appealing from the original order, and by prosecuting his claim of his stock in the bankruptcy court, he did not abandon any of his legal rights, nor obligate himself to contribute to the reimbursement of any one whose stock had been sold.

The only authorities cited in support of the proposition contended for are Chamberlain v. Greenleaf, 4 Abb. N. C. (N. Y.) 185; Gould v. Central Trust Co., 6 Abb. N. C. (N. Y.) 381; Whitlock v. Seaboard Bank, 29 Misc. Rep. 84, 60 N. Y. Supp. 611. The first of these had no application to the facts of this case. The other two are Special Term decisions, which have been held by the Appellate Division not to control when property stolen from its real owner is found unsold in the possession of the assignee of the thief. Tompkins v. Morton Trust Co., 91 App. Div. 285, 86 N. Y. Supp. 520.

So much of the order as relates to Pippey's stock is reversed, and cause remanded, with instructions to direct the trustee to return his stock to him, or, if it has been sold, to turn the proceeds over to him.

## Appeal of Mary H. Hudson.

Mrs. Hudson is the owner of the "200 shares American Can Company, preferred," which was not sold by the trust company, and was identified and demanded by the appellant. The facts differ from those in Pippey's Case in an important particular. Mrs. Hudson did not deposit her stock with McIntyre & Co. as security for transactions on her account. She loaned it to the firm for use in its business; it being agreed between them that the stock "was to continue the property of Mrs. Hudson, and to remain in her name on the books of the respective companies, and the dividends are to be paid to her." She brought no replevin suit. The original certificates remained with the trust company until after it had repaid itself by the sale of other securities, and were then turned over to the trustee. At the time of the bankruptcy, her stock was worth $10,350. At the time the order now under review was made it was worth $16,750. The order required the stock to be sold, and the whole amount paid into the fund, but liquidated Mrs. Hudson's claim against the fund at $10,350 only, on which basis she is to share and contribute.

The stock could have been "used by the firm in its business," at the same time continuing her property, only in the way in which McIntyre & Co. used it, viz., as collateral to loans which the firm effected. It cannot, therefore, be treated as "stolen stock," as in Pippey's Case, although, having survived all the risks to which her contract with the firm exposed it and been fully identified, it remained her stock, subject to such liens and obligations as have accrued against it with her consent. It should therefore contribute with the other securities similarly situated, sold and unsold, to the payment of the loans to secure which it was rightfully pledged. But when it has responded to that obligation it remains her property, and she is entitled to have it

returned to her. This would be effected by delivering the stock to her upon her paying into the fund the sum of $10,350, which was its value at the time of the bankruptcy, treating it as if it had been then used to repay the loan. On that basis it should contribute to repay the loan, and on the same basis Mrs. Hudson should share in any surplus. There is no equity in selling her stock at $16,750 and allowing her to share on the basis of $10,350 only.

We see no reason to disturb the finding of the District Court as to disbursements charged against this particular fund.

The order is reversed as to Pippey and Hudson, and cause remanded, with instructions to take further action in conformity with this opinion.