### In re A. O. BROWN & CO.

#### Ex parte SCOTTEN.

(District Court, S. D. New York. December 24, 1910.)

1. BROKERS (§ 35*)—SECURITIES OF CUSTOMERS—SALE—CONVERSION.

It is not a conversion for a stockbroker to sell the stock certificate of a customer, if the broker has that amount in similar stock on hand free and clear.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 27; Dec. Dig. § 35.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. BANKRUPTCY (§ 155\*)—COLLATERALS—SALE—RIGHTS OF OWNER.**

Where stock was deposited with a broker, on condition that it was not to be used unless the customer's account needed further security, and the broker pledged the stock and became a bankrupt, the owner, in order to obtain a preference, was not only bound to prove a conversion, but was also required to trace his property to the specific proceeds from which he claimed a preference.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.\*]

**3. BANKRUPTCY (§ 155\*)—BROKERS—CONVERSION—PLEDGING SECURITIES.**

Petitioner pledged certain stock, represented by a certificate, to a stockbroker, on condition that it should not be used unless his account needed further security, which event did not happen; but the broker, before bankruptcy, pledged the petitioner's certificate as security for loans at a bank, and it was shown that nine months thereafter the bank held a similar certificate, and only one, as security for the broker's account, though it could not be shown that the certificate deposited was the one found in the possession of the bank. *Held*, that such evidence was sufficient to establish a prima facie case, entitling plaintiff petitioner to a preference thereon at the sale of such stock, in the absence of any proof that there had been in fact a change in the securities of the bank, so far as the certificates in question were concerned.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.\*]

In the matter of bankruptcy proceedings of A. O. Brown & Co. Application by one Scotten for the proceeds of a stock certificate sold as a part of the assets of the bankrupt and alleged to belong to petitioner. On referee's report granting the application. Confirmed.

See, also, 171 Fed. 254, 281.

Thorndike Saunders, for petitioner.
Ralph Wolf, for trustee.

HAND, District Judge. It is settled that to sell the exact certificate of a customer is not even a conversion, if the broker has that amount of similar stock on hand free and clear. Richardson v. Shaw, 209 U. S. 365, 378, 28 Sup. Ct. 512, 52 L. Ed. 835; Re McIntyre, Ex parte Nivin, 174 Fed. 627, 98 C. C. A. 381. In this case the claimant must prove not only a conversion, but he must trace his property to some specific proceeds, if he is to get a preference. In order to prove that his stock, once bought by the broker, is represented by other stock of similar kind, it is not enough in this circuit merely to show that at the time of the bankruptcy the bankrupts had possession of similar stock, whether it be free and clear or pledged with a bank. Re McIntyre, Ex parte Grace Talbot et al. (C. C. A.) 181 Fed. 960. Such a showing is consistent with a conversion of the stock in the meantime, and the repurchase of similar stock, which repurchase is not prima facie presumed to be in restitution of the conversion. Re Brown & Co., Ex parte Gibbons-Hovermann (D. C.) 171 Fed. 254, is overruled.

In the case at bar it would therefore not be enough to show simply that Scotten had given the bankrupt 100 shares of Great Northern Ore certificates and that 100 shares were found pledged to the bank. What he has shown is, however, that his certificate actually went into the securities deposited on the loan on November 5, 1907,

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and that on August 25, 1908, the same bank which received it had a certificate, and only one certificate, of that stock, which was likewise for 100 shares. As the number of Scotten's certificate is not known, nobody can say absolutely that the certificate deposited on November 5, 1907, is the same as that found on August 25, 1908, and the expert accountants properly refuse to say so. It is consistent with the facts proved that the bankrupt may have withdrawn the claimant's certificate, sold it, and later substituted another of similar kind and amount. If so, then there is no presumption that the certificate replaced was meant to be in restitution. Re McIntyre (C. C. A.) 181 Fed. 960.

Here the certificate is traced into a particular place, that is, to the collateral deposited by the bankrupt in the bank's custody, and there is no proof that the certificate was ever withdrawn, or ever used by the bankrupt. Suppose the certificate was traced with other security to an actual box in the bankrupt's custody, and at bankruptcy a certificate of like kind and amount was found in that box. All possible negatives are not excluded, for the original certificate might have been withdrawn and sold; but is not the claimant entitled to the usual presumption that a state of facts, once proved, continues till the contrary is shown? This has nothing to do with any presumption about the intent of the bankrupt in buying new shares, when once you have shown that the claimant's shares have been sold; nor has it even anything to do with the presumption that the bankrupt means to substitute similar shares of stock already in his possession as his customer's, when he sells the actual certificate out of a general mass of certificates in his hands. Indeed, it is not a presumption regarding his intent at all, but regarding the question of the physical identity of one sheet of paper, deposited on November 5, 1907, with another sheet of paper found on August 25, 1908. It seems to me that that identity may be presumed quite as much when the sheet has been traced to the custody of a bank as though it were traced to a box. Having shown that it reached the bank, it will be assumed to have remained there till the contrary is shown.

Possession of land, once established, is presumed to continue. Lazarus v. Phelps, 156 U. S. 202, 205, 15 Sup. Ct. 271, 39 L. Ed. 397. The same rule applies to personal property (Chapman v. Town of Taylor, 136 N. Y. 663, 32 N. E. 1063; Bethel v. Linn, 63 Mich. 464, 474, 30 N. W. 84), though it depends naturally upon the absence of evidence which would lead to a contrary conclusion. The certificate, once shown in the bank's possession, would remain there till the loan was closed out, or till another certificate was substituted for it. Of course, there would be no presumption as to the period when it would be in fact closed out, so that the presumption of continuity would not extend to a given period; but when the period is once shown, and the presence in the loan at the end of it of a similar certificate, there only remains the possibility that it was withdrawn and another substituted. It is a fair presumption, or inference, that it remained, and it is reasonable to put upon the estate the duty of bringing forward some proof that it was withdrawn and another substituted. Records of such loan substitutions are common, and the receiver at least should have called the loan clerks, or accounted for the lack of proof. I

think that the claimant established a prima facie case of identity, call it presumption of continuity or the duty of going forward with the proof, as one may. Wigmore, §§ 2494, 2530. In all the cases where the customer has lost his stock, there was proof that his certificate was in fact sold; and the question has always been as to whether it was represented by another certificate not his. In the case at bar, it has not been shown that his certificate was ever sold at all. That proof was necessary to overcome the presumption in his favor.

Therefore the certificate sold by the bank was Scotten's, and when pledged and sold it was free and clear, because there was ample security at all times for his liabilities. The deposit was made upon condition that it was not to be used unless his account needed further security. The case is under Re McIntyre, Ex parte Pippey (C. C. A.) 181 Fed. 955, even though the certificate there remained in specie after the bank closed out the loan.

Report confirmed.