In re STRINGER.

(District Court, E. D. New York. February 7, 1916.)

1. BANKRUPTCY ⊂⊃345—PLEDGED PROPERTY—RIGHTS OF PLEDGOR.
  Where stockbrokers, who subsequently became bankrupt, having the apparent right to use as collateral securities belonging to their customers, pledged such securities for a debt, and the pledgee sold them and paid the surplus to the trustee, the customers could obtain the identified proceeds, but had only a general claim against the estate for such amounts as were not represented in the hands of the trustee by the identified proceeds of the securities owned by them, as, though the bankrupt might be prosecuted criminally or disciplined by the Stock Exchange, the securities could not be treated as stolen property, and the use of them by the bankrupt and sale in the regular way by the pledgee conveyed a good title.

  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. ⊂⊃345.]

2. BANKRUPTCY ⊂⊃210—JURISDICTION OVER ASSETS—JURISDICTION OF STATE COURTS.
  Stockbrokers, who subsequently became bankrupt, pledged as collateral security certain stock which had been deposited with them by customers as collateral or left with them as bailees. The pledgee sold the stock for more than his debt. R., one of the customers, sued the pledgee in a state court, and the bankruptcy court directed the pledgee to turn the surplus over to the trustee, to hold subject to a determination of the claim of R. "herein," and authorized the trustee to intervene in the state court action to fix the amount of R.'s claim. The state court found that the surplus was derived in part from the property of R., and judgment was rendered for him. Held, that the judgment of the state court was in effect a determination that, as between R. and the bankrupt, the surplus

belonged to R., and this determination the state court had jurisdiction to make.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321–323; Dec. Dig. ⊜⫯210.]

3. BANKRUPTCY ⊜⫯196—CLAIMS—EFFECT OF JUDGMENT.

The judgment estopped the trustee and the bankrupt estate, so far as any claim of the estate generally would diminish the fund available for R., but did not affect the right of the bankruptcy court to pass upon all claims presented to it with respect to property in the control of its officers, and R. could claim only in competition with other claimants of the same rank.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 306–316; Dec. Dig. ⊜⫯196.]

4. BANKRUPTCY ⊜⫯305—CLAIMS—EFFECT OF JUDGMENT.

A provision in the judgment allowing execution to issue against the trustee was unavailing beyond the right given thereby to use the sheriff, if necessary, in seeing that an application was made to the bankruptcy court for the requisite order to the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 466–468; Dec. Dig. ⊜⫯305.]

5. CORPORATIONS ⊜⫯123—PLEDGES OF STOCK BY BROKER—RIGHTS OF OWNERS.

Where stockbrokers pledged as collateral security stock belonging to their customers, if a particular block of collateral was sold and the amount credited on the secured debt apart from a sale of other blocks of collateral, the claimant of such block of stock would have no claim to a surplus in the hands of the pledgee arising upon the subsequent sale and application of such other blocks of collateral.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 569, 618; Dec. Dig. ⊜⫯123.]

6. CORPORATIONS ⊜⫯123—PLEDGES OF STOCK BY BROKER—RIGHTS OF OWNERS.

If all the blocks of stock belonging to a stockbroker's customers and pledged by the stockbroker as collateral security were subject to the same claim by the customers when held as collateral, the claimants were entitled to share pro rata in the surplus existing after payment of the secured debt.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 569, 618; Dec. Dig. ⊜⫯123.]

In Bankruptcy. In the matter of G. Franklin Stringer, individually and as member of Stringer & Co., and the firm of Stringer & Co., bankrupt. On application for the payment of certain proceeds of securities owned by customers of the bankrupt. Taking of further evidence ordered.

James E. Duross, of New York City, for Richardson.
Henry M. Stevenson, of New York City, for Lewis.
Frederick W. Stelle, of New York City, for Graff.
Charles A. Hitchcock, of New York City, for Nixon.
Leon M. Woodworth, of New York City, for Spooner.
A. Gordon Murray, of New York City, for trustee in bankruptcy.

CHATFIELD, District Judge. Adjudication was had in this case upon January 12, 1915. Prior thereto the firm of Stringer & Co. had

⊜⫯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pledged with Winslow & Co., as collateral security for a loan, certain shares of stock, which were thereafter sold on the dates and at the prices set forth below:

| | |
|---|---:|
| January 11th, $1,000 5% bond, Lorrilard.... | $ 1,021 81 |
| 3 Chicago, Milwaukee & St. Paul $1,000 5% bonds.... | 3,066 89 |
| 2 Eastern Tennessee & Georgia $1,000 5% bonds.... | 2,088 72 |
| 2 Chicago & Northwestern 4% $1,000 bonds.... | 1,881 72 |
| 25 shares American Cotton Oil preferred.... | 2,373 22 |
| Total .... | $10,432 36 |

| | | |
|---|---:|---:|
| January 14th, 30 shares Union Pacific.... | $3,545 37 | |
| 11 shares American Telegraph & Telephone.... | 1,299 97 | |
| 60 shares New York, New Haven & Hartford.... | 3,160 72 | |
| 10 shares California Petroleum preferred.... | 499 29 | 8,505 35 |
| January 15th, a dividend on the American Telegraph & Telephone stock added.... | | 22 00 |
| Making a total in the hands of Winslow & Co. of.. | | $18,959 71 |

The debt owing from Stringer & Co. to Winslow & Co., upon January 11th, was $13,561.86.

It appears from the record that the Lorrilard bond above named had been deposited with Stringer & Co. as collateral by a customer, one Spooner, who, after liquidation of his other transactions with the Stringer firm, is indebted to the estate in the sum of $23.80.

The three Chicago, Milwaukee & St. Paul bonds, the two Eastern Tennessee & Georgia bonds, and the two Chicago & Northwestern bonds had been deposited by a customer named Graff as collateral for his transactions with Stringer & Co. Graff had also deposited in the same way the 11 shares of American Telegraph & Telephone which were sold on the 14th of January. After liquidation of his other claims, he is shown by the record to have a claim against the estate of Stringer & Co. in the sum of $4,612.40.

The 25 shares of American Cotton Oil preferred were deposited with Stringer & Co. by one Richardson, who also was a customer, and who, so far as other transactions are concerned, appears to have a claim against the estate in the sum of $1,677.07.

The certificate for 30 shares of Union Pacific had been deposited with Stringer & Co. by one Carpenter, a customer, but no claim is made against the estate for these shares, inasmuch as liquidation of the account proves Mrs. Carpenter to have been indebted to Stringer & Co. for a greater amount than the proceeds of the shares. She therefore makes no claim specifically for any part thereof. But her debt to the estate will be diminished by such amount as she may receive therefrom, if she be entitled to any part.

The 60 shares of New York, New Haven & Hartford stock had been loaned to Stringer & Co., or to individuals as members of that firm, by Mrs. Lewis, who is a sister of the surviving partner of the firm. She has other claims against the estate for other securities, loaned by her in the same way, and her claim to the return of these securities when found in the hands of the trustee (or to the equities

therefrom when returned to the trustee) has been upheld by previous orders of the court.

The ten shares of California Petroleum preferred had been deposited with Stringer by one Nixon, a customer, who, on liquidation as to other matters, had a claim against Stringer & Co. for the sum of $932.86.

It will thus be seen that the shares sold out by Winslow & Co. upon January 11th wiped out the indebtedness of Stringer & Co. to them, with the exception of $3,128.50, and that thereby the collateral of Richardson, Spooner, and Graff was disposed of, except for the American Telegraph & Telephone stock of the customer, Graff.

Under these circumstances, a sale of Mrs. Carpenter's Union Pacific stock would have sufficed to pay the Winslow & Co. claim, and the California Petroleum preferred stock of Nixon, the New York, New Haven & Hartford stock of Mrs. Lewis, and the American Telegraph & Telephone stock of Graff would have been returned to the trustee intact. Under the doctrine applied to the Pippey and Hudson stock, in the case of In re T. A. McIntyre & Co., 181 Fed. 955, 104 C. C. A. 419 (see, also, Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845), these shares would have survived the dangers to which the same had been exposed and would be still available in the hands of the trustee to fulfill the obligations for which they had been deposited with the bankrupts as a pledge.

Before considering whether the other customers whose stock had been used by Winslow & Co. to liquidate the indebtedness to them can insist upon contribution from those customers who would have been fortunate enough to find their stock in the hands of the trustee, if Winslow & Co. had not sold out the entire amount pledged, and before we consider whether this sale by Winslow & Co. establishes any different rights as between the customers than would have existed if the stock which was not needed by Winslow & Co. had been returned intact, it is necessary to consider the claim of Richardson, which is placed upon an entirely different basis.

Application has been made to compel the bankrupt estate to account for and return these sums of money representing the balance received by the trustee in bankruptcy from the sale of stocks pledged before bankruptcy as collateral by the bankrupts. It has been shown that the identical shares of stock so pledged were deposited with the bankrupts by the petitioners seeking their return.

[1] There is no question that the equity from the sale of any particular block of stock, if that equity is created by some one who held the stock with the apparent right to use it as collateral, is all that can be *traced* into the present estate. The customers, who are now the petitioners, would have but a general claim against the estate for the amounts which are not represented in the hands of the trustee by the same certificates or the identified proceeds thereof. Although the bankrupt might be prosecuted criminally, or disciplined under the rules of the Exchange, for hypothecating (without authority or without substitution of others) securities intended to be held only as collateral, nevertheless the securities themselves are not to be treated as

stolen property. The use of them by the bankrupt as collateral, and the sale of that collateral in the regular way, against the bankrupt, conveys good title to those particular securities as against the customer (who might, however, have claimed them from the bankrupt estate, if still in its possession). Markham v. Jaudon, 41 N. Y. 235; Richardson v. Shaw, 209 U. S. 365, 28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995; Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690, 57 L. Ed. 1047.

In the present cases, the estate of the bankrupt has received only a surplus derived from the sale of the stocks, which the firm of the bankrupt had used as collateral for its own purposes, without purchase of other stock in its place. Admittedly this surplus, upon the findings presented to the court, belongs to some one or all of the petitioners as their rights may appear. Thomas v. Taggart, supra, 209 U. S. at page 391, 28 Sup. Ct. 519, 52 L. Ed. 845; In re T. A. McIntyre & Co., supra.

In such a situation, a fund in the hands of the trustee, claimed by five separate individuals and derived from the sale of five different specific properties, by the person holding those five properties as collateral, would require a reference, so as to separate or distinguish the exact equity which was obtained from each property. Each petitioner would be entitled to so much of the surplus as represented the equity of the property which had belonged to that petitioner, or to a pro rata share if the fund has been created by one sale and is insufficient to answer all the claims.

With respect to some of the present applications, this solution might easily be followed, and if it were impossible to trace the respective equities the claims would have to be prorated from the total surplus. But others of these claims raise other questions.

One claim (Richardson) has been presented to this court upon a judgment obtained in the Supreme Court of New York, in an action wherein the trustee in bankruptcy was substituted for the firm holding the collateral against the bankrupt, and in which action the judgment establishes the right of the petitioner to whatever fund may be affected, in exactly the same way as the order of this court establishes the right of each of the other four petitioners against the trustee in bankruptcy upon determination of their claim. When, however, this first claim was brought into litigation in the state court, the then defendants, Winslow & Co., who held the collateral in question, and who had applied it to the payment of their own loan, refused to turn over the equity therefrom to the trustee in bankruptcy, on the ground that they wished to interplead the bankrupt estate as a defendant to the state court action. Upon the application of the trustee, this court held that the property should be turned over to the trustee in bankruptcy; but he was given authority to intervene in the action in the state court to dispose of that litigation and to fix the amount of the claim.

The result of this proceeding was that the surplus accounted for by Winslow & Co. was turned over to the trustee, and that surplus was

found in the state court action to have been derived in part from the property of the plaintiff, who is the petitioner now seeking its return. The trustee opposed the application on behalf of all the others claiming through him.

Winslow & Co., the original defendants, in their action admitted that they had as much as the amount claimed by the plaintiff, which was the property of the bankrupt. The entire surplus was turned over to the trustee by order of this court, with a provision that the trustee "hold the amount so paid over to him by the said firm of Winslow & Co., subject to a determination of the claim of one Arleigh D. Richardson thereto herein."

[2] This was in effect a provision that the money be available to secure the claim of Richardson, to whatever extent that claim should be allowed "herein"; that is, in a court of bankruptcy. If Winslow & Co. had contended that this money was the property of Richardson, or if Richardson had claimed that he could prove, as against Winslow & Co., his right to this specific fund as an entirety, it would have been necessary to bring in all possible claimants to that fund and to adjust those claims before it could be known what portion of the money in the hands of Winslow & Co. belonged to Richardson. The judgment of the state court is in effect a determination that, as between Richardson and the bankrupt, the property would belong to Richardson, and this question the state court had full jurisdiction to determine. Frank v. Vollkommer, 205 U. S. 521, 27 Sup. Ct. 596, 51 L. Ed. 911.

[3-5] Richardson, therefore, is in the position of claimant against the estate in the hands of the trustee in bankruptcy, whose claim cannot be disputed, except by those claimants of equal rank in the bankruptcy proceeding. The trustee had no right to bind one claimant, or one set of claimants, as against another, by taking up the burden of litigating on behalf of Winslow & Co. the validity of their claim as against the bankrupt.

Nor does the jurisdiction of the state court in determining the validity of that claim affect the right of this court to pass upon all claims presented to it with respect to property in the control of its officers. Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122; Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885. The proceedings in bankruptcy and the bankruptcy court must recognize the validity of the Richardson claim and the validity of the judgment as a basis for that claim, but the amount which can be paid thereunder depends upon the distribution of the fund in the bankruptcy proceeding.

If this question had been raised prior to the trial in the state court, the issue there might have been limited, so as to render judgment only with respect to so much of the fund as could be shown to have been the property of Richardson. The action of the trustee in litigating the question, without determining the precise amount which would result from a judgment in behalf of Richardson, estops him and the bankrupt estate, so far as any claim of the estate generally would diminish the fund available for Richardson. The expense of litigating the

Richardson claim would have to be borne by the estate in bankruptcy generally, and would be a matter to be considered between the trustee and the general creditors; but the fund which is available for the payment of the Richardson claim is only that fund which Richardson can claim at the hands of the bankruptcy court, in competition with other claimants of the same rank. It is evident that the provision allowing execution to issue against the trustee in bankruptcy is unavailing beyond the right given thereby to use the sheriff, if necessary, in seeing that an application is made to this court for the requisite order to the trustee in bankruptcy. But the court of bankruptcy must now determine, if possible, the total proceeds in the hands of Winslow & Co. from the property of each claimant, and must determine the way in which the surplus in the hands of Winslow & Co. shall be treated. If a particular block of collateral was sold and the amount credited apart from a sale of the other blocks of collateral, then the claimant of that block of stock would have no claim to the surplus in the hands of Winslow & Co., but must look entirely for recourse to the bankrupt and his estate.

[6] If all the blocks of stock held as collateral were subject to the same claim by their owners, when held as collateral by Winslow & Co., then the claimants are entitled pro rata to share in the surplus. This seems to be the doctrine as to the Hudson stock in the case of In re T. A. McIntyre & Co., supra.

The petition of Richardson for an order directing payment of his entire judgment is based upon his contention that (as in the case of Matter of Mills, 125 App. Div. 730, 110 N. Y. Supp. 314, affirmed 193 N. Y. 626, 86 N. E. 1128, and as in the case of the Pippey stock, in 181 Fed. 955, 104 C. C. A. 419) his shares of American Cotton Oil had not been deposited as collateral, but were held merely by the bankrupt firm as bailee. This seems to have been the finding of the state court, but the present record does not show how the Graff and Nixon stock was deposited, nor whether they were properly applied to maintain sufficient margins for those traders. If Graff, Nixon, Spooner, and Carpenter were all customers whose stock was needed to maintain margins, then Richardson would seem to have superior rights to each of the others. If any of these have equal rights with Richardson, that one would share with him in the fund in advance of the others.

It seems that Mrs. Lewis cannot claim any wrongful use of her stock, and that (like the Hudson claim in the McIntyre Case, supra) she can receive only what may remain in the hands of the trustee after the claims of those with superior rights are satisfied, and which can actually be traced as having survived the risks which were anticipated by her in loaning it. So far as the other claimants are concerned, she has no more right than a general creditor of the firm or of one of the individual partners. Further evidence must be taken to establish the relative priority of the claimants, in accordance with this opinion. A further hearing or reference for that purpose will be ordered on application.