### ROBINSON v. ROE.

(Circuit Court of Appeals, Second Circuit. May 23, 1916. On Petition for Rehearing, June 14, 1916.)

No. 257.

1. BROKERS ⊕═8(3)—AUTHORITY—EVIDENCE.

Evidence *held* to show that a customer of brokers, retaining title himself, authorized them to hypothecate for the requirements of their own business securities deposited with them, and also delivered securities to hypothecate to raise funds to carry them over a period of temporary financial distress.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 9; Dec. Dig. ⊕═8(3).]

2. BANKRUPTCY ⊕═165(2)—"PREFERENCE"—WHAT CONSTITUTES.

Where a customer of brokers, who authorized them to generally hypothecate securities deposited with them, and delivered to them securities to carry them over a period of financial distress, retained his title to the securities so hypothecated, and the brokers, though insolvent, satisfied the loans for which the securities were pledged and redelivered them, such transaction did not constitute a "preference," voidable by the trustee in bankruptcy of the brokers subsequently appointed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 266; Dec. Dig. ⊕═165(2).

For other definitions, see Words and Phrases, First and Second Series, Preference.]

3. BANKRUPTCY ⊕═165(1)—CLAIMS—CONVERSION.

In such case the fact that the brokers did not on demand return the securities did not, where time was extended, amount to a conversion leaving the customer only a right of action which could be proved as a claim in bankruptcy, and therefore the return did not amount to a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 266; Dec. Dig. ⊕═165(1).]

4. BANKRUPTCY ⊕═140(3)—PROCEEDINGS—PROOF OF CLAIM.

That one who loaned securities to brokers proved his claim for the value of such securities does not prevent him from reclaiming the actual securities themselves, provided he reserved the right to do so.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. ⊕═140(3).]

---

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On Petition for Rehearing.

5. PRINCIPAL AND SURETY ☞15—SURETIES—WHO ARE.

    Where securities belonging to a customer of certain brokers were pledged by them to secure their own debt, the customer, though the pledge was authorized, was not a surety for the brokers' debts, for, in case the security was insufficient to discharge them, no personal liability attached.

    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 34; Dec. Dig. ☞15.]

Appeal from the District Court of the United States for the Southern District of New York.

Bill by Beverley R. Robinson, as trustee in bankruptcy of John B. Van Schaick and Derby Crandall, individually and as copartners composing the firm of Van Schaick & Co., against Charles F. Roe. From a judgment for defendant, complainant appeals. Affirmed.

Walter C. Noyes, of New York City, for appellant.
H. W. Taft, of New York City, for appellee.

Before WARD and ROGERS, Circuit Judges, and MAYER, District Judge.

WARD, Circuit Judge. This is a bill in equity by Beverley R. Robinson, as trustee in bankruptcy of John B. Van Schaick and Derby Crandall individually and as copartners composing the firm of Van Schaick & Co., stockbrokers, against Charles F. Roe, under section 60 of the Bankruptcy Act, to recover preferences alleged to have been received by him. The special master advised a judgment against the defendant for the sum of $88,490.77, with interest, and upon exceptions to his report Judge Hough dismissed the bill. The complainant appeals.

The defendant, Roe, had dealt with the bankrupts and their predecessors for some 40 years. He bought and sold stocks through them on a large scale, but never on margin, and drew checks on them for considerable sums as he required them. To secure the bankrupts he left in their keeping large amounts of securities, never less than twice the amount of his debit balance, which were, as he supposed, all in his own name, indorsed by him in blank, but in fact a few, without his knowledge, were in the name of the bankrupts. The value of the securities averaged $1,000,000 and his debit balance was often as much as $500,000 or $600,000.

[1, 2] The first dispute between the parties is whether the bankrupts were authorized to hypothecate the defendant's securities only so far as necessary to secure his debit balance, or whether they had the additional privilege of hypothecating them for the requirements of their own business also. There is much criticism in the briefs as to inconsistencies between the pleadings, testimony, and final attitude of counsel on either side on this question, which we need not go into; our duty being to determine what really was the fact, and about it we have no doubt. No specific agreement giving the bankrupts the right to hypothecate the defendant's securities for their own benefit is proved, except upon two occasions, viz., in October, 1907, and August,

1911, to be presently considered. It is quite clear, however, that the bankrupts had continuously for many years pledged the securities carried in his account in excess of the debit balance as they needed money, and the statements of account which they furnished to him three or four times a year all bore on their face at the beginning the following:

"It is understood and agreed that all securities carried in this account or deposited to secure the same may be carried in our general loans and may be sold or bought at public or private sale without notice when such sale or purchase is deemed necessary by us for our protection."

Twice in the history of the firm it applied to the defendant to help them over a financial crisis, viz., in October, 1907, and in August, 1911, after all his securities in their possession had been hypothecated. In answer to this application he did not refer them to his securities in their box not needed to cover his debit balance, but on each occasion went to his own box for additional securities, showing plainly that he knew they had hypothecated all of his securities they had. These securities were, of course, given for the express purpose of being hypothecated for their benefit. The securities advanced in 1907 went into the bankrupts' box and remained there, and were continued to be treated in the accounts exactly as all the other securities of the defendant had been. We think it a necessary inference that both parties understood that these securities also were subject to the bankrupts' general privilege of hypothecating them for their own requirements. There is no such long history connected with the securities advanced by the defendant August 22, 1911, because the bankrupts made an assignment for the benefit of creditors September 12, 1911, but we see no difference between the two classes in principle.

The complainant contends that the securities advanced in 1907 and 1911 were loaned and that the title to them passed from the defendant to the bankrupts. Doubtless securities may be loaned to be used by the borrower generally and returned in kind in such a way as to transfer title to the borrower, just as if they were money. But these were not loaned absolutely and unconditionally to the bankrupts for any and all purposes, but for the specific purpose of being hypothecated in bank loans to aid them in their difficulties. We think the title remained in the defendant in all his securities in the possession of the bankrupts and that it was their duty to return them on demand or if there were a debit balance against him, then as to such as were needed to cover that balance on payment of the same. The transaction of October 23, 1907, involved the use of securities to "tide them [the brokers] over." The testimony of Mullener as to the conversations with Roe of August 11 and 12, 1911, and the handing to him by Roe of the securities at the Lincoln Trust Company show a transaction similar in purpose to that of October 23, 1907. Both transactions, while not in writing, were on all the evidence in this case, in our opinion, of the same character and effect as the written contract between Mary H. Hudson and T. A. McIntyre & Co., in Re T. A. McIntyre & Co., 181 Fed. 955, 959, 104 C. C. A. 419.

In August, 1911, when the last securities were advanced, the firm

was insolvent, and an involuntary petition in bankruptcy was filed against it November 17, 1911. August 22 the defendant's account showed a debit balance of $259,098.76, and the bankrupts had his securities to the market value of $1,118,603.50, all of which they had hypothecated, except 1,100 shares of Distillers' Securities. August 30th by the sale of some of the defendant's hypothecated securities he paid off this debit balance in full and made formal demand of the bankrupts for the return of the remaining securities, agreeing to give them the necessary time to do so. Obviously they could not do so at once.

September 12, 1911, the bankrupts made an assignment for the benefit of creditors. Between August 22d and that date the defendant employed accountants to go over the bankrupts' books and kept a representative in their office; the purpose of both parties being to ascertain in what particular bank loans his securities were, and so to distribute them that they should as far as possible represent the margin of the loans. All the other securities in the bank loans belonged to the bankrupts or were treated by both parties to this cause as theirs, and properly to be exhausted before resort was had to the defendant's securities. Therefore, as between the defendant and the bankrupts, all their loans from the banks may be treated as one indebtedness, as to which the defendant was their surety to the banks. The bankrupts, by using their own securities and cash in this way, released and returned to the defendant out of the bank loans a large quantity of his securities before the assignment for the benefit of creditors, and the banks after the assignment, on closing out the loans, returned further securities and some cash. The complainant contends that, as to such of these securities as were by the use of bankrupts' assets returned to the defendant, he received a preference within four months of the filing of the petition. There could be no objection, under the Bankruptcy Act or otherwise, to these dealings between the bankrupts and the defendant, unless he were at the time a creditor. Richardson v. Shaw, 209 U. S. 365, 28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981. They were simply returning him his own.

[3, 4] The complainant, however, contends that he was a creditor on the ground that, it being the duty of the bankrupts to return his securities to him on demand August 30th, when they were not in a position to do so, they were guilty of a conversion, which, being a provable claim, constituted him a creditor, and the release of the securities thereafter by use of the bankrupts' assets was a preference to the amount of assets so applied. Assuming, for the purposes of argument, that this is so, there could be no conversion, notwithstanding that the defendant had demanded the return of his securities August 30th, so long as he was willing to give the bankrupts time to do so. He was entirely willing and they did return them, so that there was no conversion. However, we think that, even if he had made a present demand which the bankrupts were unable to comply with, his title to the securities remained in him, and he had a right to pursue them specifically, and although he also had a right to treat the act of the bankrupts as a conversion, and to prove his claim as a creditor in

the bankruptcy proceeding, he could not be compelled to do so, and in fact did not do so. Indeed it seems he could prove his claim reserving his right to reclaim. Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845.

The decree is affirmed.

## On Petition for Rehearing.

Robert Forsyth Little and B. W. B. Brown, both of New York City (Walter C. Noyes, of New York City, of counsel), for appellant.

William C. Cammann, of New York City (Henry W. Taft and George Coggill, both of New York City, of counsel), for appellee.

Before WARD and ROGERS, Circuit Judges, and MAYER, District Judge.

PER CURIAM. [5] The petitioner relies upon the following sentence in our opinion as showing that Roe was a creditor of the bankrupts and as such received a preference:

"Therefore as between the defendant and the bankrupts all their loans from the banks may be treated as one indebtedness, as to which the defendant was their surety to the banks."

This sentence would have better expressed our thought if it had concluded thus:

"* * * As to which the defendant's securities were their surety to the banks."

There was no contract between Roe and the banks at all. They were entire strangers. He was not their surety, and they could not have collected anything from him, nor could he derive anything from them by way of subrogation. The banks as secured creditors could have proved under section 57e (Act July 1, 1898, c. 541, 30 Stat. 560 [Comp. St. 1913, § 9641]) the amount of their claims over the value of the securities they held, whereas Roe could have proved the whole value of his securities, if not returned to him. Even if he had such a provable claim; he was not obliged to prove it, but could, as we have heretofore held, have reclaimed his securities specifically. As between the bankrupts and Roe his securities are to be regarded as their surety to the banks, in the sense that their securities should be exhausted in paying the banks before his are resorted to. If all of Roe's securities had been in one loan, which was sufficiently secured by the bankrupt's securities, there would have been no wrong done if the bankrupts had obtained them from the banks and handed them over to him. Because there were no other securities pledged to the banks than those belonging to the bankrupts and to Roe, we were able to treat the bankrupts' whole indebtedness to the banks as single and to be wholly paid out of their securities. Therefore there was no preference to Roe as a creditor when the securities were redistributed, so as to leave his in a situation to be last resorted to.

The petition for a rehearing is denied.