## In re STRINGER.

(District Court, E. D. New York. July 15, 1916.)

1. PARTNERSHIP ⊚⇒237—NEW FIRM—LIABILITIES.

Where a partner, on dissolution of an earlier firm, assuming all liabilities, took over the assets and formed a new firm, which later became bankrupt, and the old firm was not insolvent at the time of dissolution, debts due from the old firm can be proven against the property of the new firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 489, 490, 493, 494; Dec. Dig. ⊚⇒237.]

2. BANKRUPTCY ⊚⇒309—CLAIMS—RIGHT TO PROVE.

The right of one who advanced securities to assist a partnership, to prove the claim against the firm, is not affected by the fact that the loan was entered on the firm books as a loan to one of the partners and not to the firm.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 555-564; Dec. Dig. ⊚⇒309.]

3. BANKRUPTCY ⊚⇒51—ADJUDICATION—EFFECT.

Where the surviving partner filed a petition in bankruptcy and was adjudicated a bankrupt, such adjudication carried with it the entire

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rights and obligations of the firm as it existed before dissolution by the death of the other copartner.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 49; Dec. Dig. ☞51.]

4. BANKRUPTCY ☞309—DEBTS—PROVABLE DEBTS.

Bankr. Act July 1, 1898, c. 541, § 5, subd. "f," 30 Stat. 547 (Comp. St. 1913, § 9589), provides that the net proceeds of the partnership property shall be appropriated to the payment of the partnership debts and the net proceeds of the individual estate of each partner to the payment of his individual debts, while, if any surplus remains of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets, while any surplus remaining after payment of partnership debts shall be added to the individual assets of a partner. A sister of a member of a firm made considerable advances to him, which moneys and securities he used in connection with the firm business, while at the request of such partner advances were made by her directly to the firm. *Held* that, notwithstanding that the advances made to the partner as an individual were used in connection with the firm business, the sister's claim for such advances must be proven first against the partner's individual estate, while as to the other advances they must be proven first against the firm estate, and in case of a surplus as to either estate the claims might be proven against such surplus.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 555–564; Dec. Dig. ☞309.]

In Bankruptcy. In the matter of the bankruptcy of G. Franklin Stringer, individually and as the sole surviving partner of Stringer & Co. Proceeding to review the allowance by the referee of the claims of Mrs. Mary E. Lewis and others. Upheld as to some of the claims, reversed as to others.

See, also, 233 Fed. 799.

A. Gordon Murray, of New York City, for trustee.
Henry M. Stevenson, of New York City, for claimants.
Ward D. Williams, of New York City, for general creditor.

CHATFIELD, District Judge. The referee has found as a fact that certain items advanced by Mrs. Mary E. Lewis, by her son, H. Leroy Lewis, and by the H. J. Lewis Oyster Company, should be allowed as valid claims against the estate in bankruptcy of Stringer & Co., a copartnership having as its members, G. Franklin Stringer (a brother of Mrs. Lewis) and his son (G. Franklin Stringer, Jr.). This firm was in existence from May 23, 1912, to the death of G. Franklin Stringer, in January, 1915. The petition in bankruptcy immediately followed, being filed by G. Franklin Stringer, Sr., as an individual and as the sole surviving partner of Stringer & Co.

[1] The referee has in general made findings as to two issues presented upon the testimony. One of these is as to the obligations of Stringer & Co. with respect to the assets and liabilities of a firm known as Jewell & Stringer (or Jewell, Stringer & Co.) in which firm G. Franklin Stringer, Sr., was a partner. The other member of this firm held a Stock Exchange seat in his name, which was sold for the benefit of this firm when the firm was dissolved at G. Franklin Stringer's request. The proceeds of this stock including the seat were used in

liquidation of the partnership debts, which were all assumed by G. Franklin Stringer, who also took over the assets and who immediately formed the firm of Stringer & Co. with his son, putting into this new firm the assets of Jewell & Stringer, and assuming therewith the debts of that firm as a necessary accompaniment of taking over the assets. The firm of Jewell & Stringer was not insolvent. The referee has found, therefore, that the firm debts of Jewell & Stringer can be proven against the property of Stringer & Co.

It also appears that some of the securities upon which the claims are based have been used continuously as collateral since the formation of the firm of Stringer & Co., and were actually disposed of and applied to the account of Stringer & Co. when that firm's loans were finally closed out under the rule. As to these latter items there would seem to be no question that the firm of Stringer & Co. was properly held to have succeeded to the obligations successively of Jewell & Stringer and G. Franklin Stringer, Sr., in the same way that it would have been liable for these obligations if the original transactions had occurred since the formation of the firm of Stringer & Co. In other words, the finding of the referee that for the purposes of these claims Stringer & Co. was the successor and assumed the obligations of Jewell & Stringer, is correct.

[2-4] The second proposition, found by the referee as to all of the claims, presents a different situation. The claim of the H. J. Lewis Oyster Company, for the sum of $25,091.69, is based upon a check drawn to the order of Jewell & Stringer, for which a demand note, signed by Jewell & Stringer, was given.

The claim of H. Leroy Lewis is based upon 6 bonds, of the par value of $1,000 each, of the International Silver Company, which H. Leroy Lewis took from his own funds and *delivered to Jewell & Stringer* in order to make up a block of 15 of such bonds, which Mrs. Lewis requested her son to take out of her safe deposit box and deliver in response to a request therefor by her nephew, G. Franklin Stringer, Jr. But 9 of these bonds were found in the possession of Mrs. Lewis by her son, H. Leroy Lewis, and he therefore added the 6 bonds of his own and delivered them all to Jewell & Stringer, who proceeded to credit them in an account marked "G. Franklin. Stringer, Sr., Special."

The subsequent treatment of these securities in this account was the same as that accorded to the other securities turned over at the dissolution of that firm to G. Franklin Stringer, as surviving partner, and by him to Stringer & Co. The manner of entering this loan upon the books of Jewell & Stringer would not affect the obligation incurred by that firm when it received the securities, and plainly the finding of the referee is correct when he holds that the firm of Stringer & Co. was indebted to H. Leroy Lewis for the 6 bonds in question, and to the H. J. Lewis Oyster Company for the $25,091.69 upon the demand note made by Jewell & Stringer therefor. But the referee has held also that certain securities advanced by Mrs. Lewis, including the 9 bonds just referred to, were also obligations of Jewell & Stringer, and hence valid as claims against Stringer & Co., when they found their way into the hands of Jewell & Stringer and were used by it for firm purposes.

Mrs. Lewis makes some point of the fact that no formal adjudication in bankruptcy has been entered against the firm of Stringer & Co. as a separate entity, but this does not affect the situation and is in fact incorrect. We have not in this case any question under section 5 of the bankruptcy statute, growing out of the rights or obligations of either a solvent partnership or a solvent partner. Both the individuals and the firm were insolvent. The surviving partner filed the petition in bankruptcy and represented at that time the entire entity of the partnership. As such surviving partner, he has been adjudicated a bankrupt, and this carries with it the entire rights and obligations of the firm as it existed before the death of G. Franklin Stringer, Jr.

It appears, as found by the referee, that a large amount of money, totaling several hundred thousand dollars, was advanced by Mrs. Lewis, at the request of her brother, and for use by him in his business. The greater part of these items were admittedly obligations of G. Franklin Stringer as an individual, and are not included in the claims sought to be proven against the partnership assets. The balance of this amount passed, after delivery to G. Franklin Stringer, immediately into the possession of Jewell & Stringer, being there entered in the G. Franklin Stringer, Sr., special account, and the referee has found that these were valid obligations of Jewell & Stringer to Mrs. Lewis. As to one item, namely, the sum of $5,000 cash and nine $1,000 bonds, the testimony shows that a request by the firm of Jewell & Stringer was made to Mrs. Lewis, during the absence of G. Franklin Stringer, Sr., on business in Mexico. This amount was received directly by the firm of Jewell & Stringer, and, while entered on its books in the G. Franklin Stringer, Sr., special account, was nevertheless plainly advanced for firm needs, and must be held to have been loaned upon the credit of that firm, and therefore provable against it as a firm debt to Mrs. Lewis. It would make no difference whether the motive by which Mrs. Lewis was actuated was a desire to help her brother, or to comply with his wishes. The firm of Jewell & Stringer was liable therefor to Mrs. Lewis, and upon the transfer of this obligation, with the assets of the firm of Jewell & Stringer, to G. Franklin Stringer as surviving partner, and with the immediate transfer by him of these assets to the firm of Stringer & Co., this item became a debt against the firm of Stringer & Co., and the allowance of the claim by the referee is correct.

As to the balance of the claim allowed by the referee, however, a different situation is presented. The referee has found as a fact that this sum was loaned by Mrs. Lewis, knowing that her brother was "the influential and controlling member of the firms of Jewell & Stringer and Stringer & Co." Of course the time of making these loans was long before the dissolution of the firm of Jewell & Stringer, and his connection with Stringer & Co. could not relate back so as to enter into her prior transactions. The referee has also found that Mrs. Lewis in her testimony speaks solely of him and his business without referring to his partners or partner, when the moneys were borrowed by him or paid to him directly. The referee finds that Stringer sought assistance from his sister. She asked no explanation, required no se-

.curity, and had no written agreement or arrangement, only an oral understanding that it would be repaid out of his earnings or those of the firm. The referee finds that it stands out clearly from her testimony and that it was mutually understood that the funds and proceeds of all the loans were for "his business purposes." The referee finds that these funds actually were advanced "with the knowledge or understanding that they were intended to be used for the firm's business," and that Mrs. Lewis "relied upon the success of Stringer's firm for the repayment of her loans." In this connection he also finds that these advances to Mr. Stringer were not made for the purpose of furnishing a partner with funds with which to make his contribution to capital.

These last findings, however, seem to be immaterial and the conclusion of the referee that the claims of Mrs. Lewis were "direct liabilities in the first instance of the firm of Jewell & Stringer," is an incorrect conclusion of law based upon a finding of fact which is not supported at all by the evidence as to the funds given directly to Mr. Stringer. It appears plainly from the testimony that Mrs. Lewis made these loans to her brother, to help him in his business needs. She made the loans in order that he might have the benefit therefrom, and with the necessary understanding that they were subject to such use or such risks as he might apply them to. If the specific shares of stock had survived all of the risks to which they were subjected by G. Franklin Stringer, and had been returned into the possession of the trustee in bankruptcy, in whole or in part, in their original form, that is, in the shape of the original shares of stock, the matter would resemble the Hudson claim in the matter of In re McIntyre, 181 Fed. 955, 104 C. C. A. 419. But none of these securities have survived the uses to which they were put, and all of them were, in one form or another, turned over to the firm of Jewell & Stringer as the funds of G. Franklin Stringer, for the purpose of his business, and credited in the account of G. Franklin Stringer, Sr., special.

The testimony of Mrs. Lewis shows that she relied upon the obligation of her brother (whether operating as an individual or as a partner in the firm of Jewell & Stringer) to see that the loans were returned to her after his business needs had been met, or when his business conditions would allow such return. Under these circumstances, it cannot be held that the firm of Jewell & Stringer, or of Stringer & Co., was unjustly enriched by the property of another individual. The moneys received by the firm from the advances by Mrs. Lewis were applied to the firm's uses by G. Franklin Stringer, a partner. His individual creditors cannot follow his individual property and be paid dividends therefrom in bankruptcy until the firm creditors have been paid in full. Section 5, subdivision "f," of the Bankruptcy Law. If the debt is an individual debt, then it cannot be changed and treated as a partnership debt, merely from the fact that the funds obtained by the individual can be traced into the hands of the partnership and there commingled with the partnership funds. The very finding that the advances of Mrs. Lewis to her brother made him as an individual her debtor determines that the same debt could not be allowed as a claim against the partnership. His application of the moneys to the

firm purposes was the use of his individual property, for which, of course, he was responsible to his own creditors. But after its use as his individual property it is available for the payment of firm creditors until the firm's debts are paid.

The allowance of the claim of the H. J. Lewis Oyster Company in the sum of $25,091.69, the claim of H. Leroy Lewis for $6,706.65, and the claim of Mary E. Lewis for $15,000 will be sustained. The allowance of the claim of Mary E. Lewis in the sum of $47,033.04 will be reversed, and this amount will be allowed her as a claim only against the individual estate of G. Franklin Stringer.